Argued and submitted June 2, 1982, reversed and remanded March 2, reconsideration denied April 14, petition for review denied June 29, 1983 (295 Or 259)

## 1000 FRIENDS OF OREGON et al,
*Petitioners,*

*v.*

## WASCO COUNTY COURT et al,
*Respondents.*

(81-132; CA A24016)

659 P2d 1001

Mark J. Greenfield, Portland, argued the cause and filed the briefs for petitioners.

Bernard L. Smith, District Attorney, The Dalles, argued the cause and filed the brief for respondent Wasco County.

Allen L. Johnson, Portland, argued the cause for respondents David Knapp, Richard Dennis Smith, Kent Bullock, Samadhi Matthews, and Chidvalis Rajneesh Meditation Center. With him on the brief were Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene, Edward J. Sullivan, Stephen L. Pfeiffer and O'Donnell, Sullivan & Ramis, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioners seek review of a Land Use Board of Appeals (LUBA) order dismissing a matter for lack of jurisdiction. Petitioners had challenged an order of the Wasco County Court granting a petition for incorporation of the City of Rajneeshpuram, adopting findings and conclusions, fixing boundaries of the proposed city and setting a date for a special election on the matter of incorporation. LUBA held that Wasco County's order was not a "land use decision" under ORS 197.015(10) and was therefore not subject to LUBA review. Or Laws 1979, ch 772, § 4. We reverse and remand.

Whether incorporation of a city is a land use decision centers on the meaning of ORS 197.175(1), which provides:

> "(1) Cities and counties shall exercise their planning and zoning responsibilities, including, but not limited to, a city or special district boundary change *which shall mean the incorporation* or annexation *of unincorporated territory by a city* and the formation or change of organization of or annexation to any special district authorized by ORS 198.705 to 198.966, 199.410 to 199.519 or 451.010 to 451.600, in accordance with ORS 197.005 to 197.430 and 197.605 to 197.650 and the goals approved under ORS 197.005 to 197.430 and 197.605 to 197.650." (Emphasis supplied.)

LUBA concluded that "incorporation" as used in the statute is ambiguous and that the legislative history suggests that the legislature did not intend the goals to apply to incorporation of a new city. LUBA decided, however, that the legislative history was not dispositive, either. It then proceeded to examine ORS 197.175(1) in light of the statutes governing incorporation proceedings, ORS 221.010 to 221.106. It determined that, based on *McManus v. Skoko,* 255 Or 375, 467 P2d 426 (1970):

> "* * * ORS 221.010 to 221.106 gives a county *no* discretion to disallow an election, provided at least 20. of the persons within an area in which 150 people reside petition the county to incorporate. The county's *sole* discretion is to determine which properties would benefit from the incorporation and to 'alter the boundaries' so as to include only those properties which will or may benefit by being included * * *. This discretion is limited in that the county

may not so alter the boundaries as to exclude all properties. *Millersburg Development Corp. [v. Mullen,* 14 Or App 614, 514 P2d 367 (1973, *rev den* (1974) (interpreting *McManus v. Skoko, supra)].* Because the county has no discretion to refuse an election, it cannot deny an election on the grounds the proposed city violates the goals." (Emphasis in original.)

LUBA determined that it was possible that a county could apply the statewide planning goals in deciding whether property that may benefit from incorporation should be included or excluded. However, it concluded that the legislature did not intend that counties be *required* to apply the goals in making that decision:

"* * * There is nothing in ORS 221.010 to 221.106 [governing incorporation of cities] to suggest the legislature so intended. We could conclude that the legislature merely forgot to amend ORS 221.010 to 221.106 to reference the goals when it amended ORS 197.175(1). This conclusion would be more plausible, however, had the 1981 legislature not amended ORS 221.010 to 221.106. Since the 1981 legislature was amending both ORS 197.175(1) and ORS 221.010 to 221.106 at the same time, it seems reasonable to assume that if the legislature had intended to grant counties discretion to deny incorporation on the basis of the goals, the legislature would have said so in the amendments to ORS 221.010 to 221.106. Similarly, had the 1981 legislature intended to expand counties' responsibilities by requiring application of the goals when deciding whether property which may benefit from incorporation should be included, the legislature could easily have said so in the amendments to ORS 221.010 to 221.106."

LUBA concluded that application of the goals is not feasible in the incorporation process and that the legislature must therefore not have intended to use the term "incorporation" in ORS 197.175(1) in the same sense it is used in ORS chapter 221.

Petitioners contend that the language of ORS 197.175(1) is unambiguous and requires that incorporation of a city comply with statewide planning goals and therefore that Wasco County's order granting the petition to incorporate was a land use decision.[1] They further contend

---

[1] The Wasco County Court did, in fact, determine which goals were applicable and whether the incorporation complied with applicable goals.

that, even if the language is ambiguous, both rules of construction and legislative history support their reading of the statute's meaning.

First, we find that ORS 197.175(1) is not ambiguous, although it could have been more artfully drafted. LUBA read the phrase "of unincorporated territory by a city" in ORS 197.175(1) to modify both "the incorporation" and "annexation." On the basis of that reading, LUBA could not tell whether the legislature had intended that only boundary changes by existing cities be subject to the goals or had made a grammatical error, remediable by inserting "of" after "incorporation." In the former case, "incorporation" could not, according to LUBA, mean creation of a new city — the legal definition — because a new city is not created by an existing city. Therefore, as LUBA analyzed it, "incorporation" by an existing city would be a synonym for "annexation," which is governed by ORS chapter 222. *See also* ORS ch 199.

The difficulty with LUBA's approach is that, in order to avoid holding that the legislature wrote an ungrammatical sentence, LUBA has effectively read out of the statute a word that has an accepted and distinct legal meaning, *i.e.*, the word "incorporation." That distinct legal meaning is found in ORS chapter 222, under which the only way to add unincorporated territory to an existing city is by annexation, alone or in conjunction with incorporation of a city or with merger of existing cities. ORS 222.111 *et seq;* 222.210 *et seq;* 222.610 *et seq.* That chapter uses "incorporation" to mean creation of a city, not as a synonym for annexation. We agree with LUBA that it is appropriate to resort to chapter 222 to assist in understanding terms used in ORS 197.175(1); however, because chapter 222 distinguishes annexation from incorporation, we read "annexation" in ORS 197.175(1) also to be distinct from incorporation.[2]

---

[2] Further, if incorporation were but a synonym in ORS 197.175(1), it would be surplusage. That seems unlikely in that the 1981 legislature amended ORS 197.175(1) to use the term where it had not been used. ORS 174.010 requires us, if possible, to give effect to all particulars in a statute. Therefore, we must if possible give meaning to both "incorporation" and "annexation" so that each has effect.

Because we do not find the ambiguity that LUBA found, we need not resort to the extrinsic aids that LUBA used. However, we note that the development of ORS 197.175(1) and of the 1981 amendments shows legislative intent to expand city and county planning responsibilities to include application of the goals to "boundary changes" by incorporation in addition to those made by annexation.

■     Furthermore, we find no significance in the legislature's failure to cross-reference the goals in ORS 221.010 to 221.106 or to cross-reference those statutes in ORS 197.175(1).[3] The legislature has not cross-referenced the goals in other statutes about other matters to which they have been held to apply. *See, e.g., Peterson v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977) (goals apply to annexation decisions under ORS 197.175(1), although that statute did not then expressly refer to annexation or to ORS chapter 222). We conclude that the legislature intended that incorporation decisions under ORS chapter 221 also fall within the statutory category of "planning * * * responsibilities" that counties must exercise in accordance with the applicable statewide planning goals pursuant to ORS 197.175.[4]

Respondents argue that the county's decision is not a "final" decision, because it does not itself incorporate a city or change a land use policy and because its impact, if any, is contingent on the election. Although it is true that the county's decision does not implement incorporation or land use changes, it is the final quasi-judicial, discretionary decision that the county can make on application of the

---

[3] Although the amendments to ORS 197.175(1) and 221.010 to 221.106 were considered in the same session, they were not, contrary to LUBA's statement, considered "together" but were considered on different dates by different committees and on different dates by the legislature as a whole. The mere fact that both were considered *by the same legislature* is of no significance.

[4] Contrary to respondents' third argument, made for the first time on appeal, application of the goals to incorporation does not violate the "Home Rule" amendments to Oregon Constitution Article IV, § 1(5) and Art XI, § 2. Under Article XI, Section 2, the legislature has power to make general laws governing formation of cities, although it may not itself create a city by enacting a special law. *State v. Port of Astoria,* 79 Or 1, 11, 154 P 399 (1916). The "goals are general laws addressed primarily to substantive, regulatory objectives of the state, and they are not irreconcible with [a] city's freedom to choose its own political form * * *." *City of Pendleton v. Kerns,* 56 Or App 818, 826-27, 643 P2d 658, *aff'd* 294 Or 126, 653 P2d 992 (1982). (Citations omitted.)

goals to incorporation and as to incorporation itself. It initiates the process by which a final "legislative" decision is made by the voters. *See Stewart v. City of Corvallis,* 48 Or App 709, 617 P2d 921 (1980), *rev den* 290 Or 491 (1981). What is final for purposes of LUBA review (and ours) is not necessarily the act that completes the process; it is, rather, LUBA's concern as the last decision that concerns a local government's application of the goals, ORS 197.015(10)(a),[5] *i.e.,* the county's decision to authorize an incorporation election.

■ After this case was argued, the Supreme Court decided *City of Pendleton v. Kerns, supra,* in which it applied the standard it had adopted in *Peterson v. Klamath Falls, supra,* as to what land use decisions are subject to LUBA review: local planning activities that will have a significant impact on present or future land use. In *City of Pendleton,* the city had adopted an ordinance authorizing a street improvement. The court applied *Peterson* to hold that the ordinance was "subject to LUBA review if, but only if, it can be said that the street improvement *work* will have a 'significant impact on present or future land uses' * * *." 294 Or at 134. (Emphasis added.) The court did not say that the decision had to have that impact before it was reviewable; it said that the implementation of the decision must have an impact. Yet, that decision was reviewable before the decision could be implemented or have an impact. We understand the standard to mean that if the completed process would have a significant impact, the decision implementing the process is reviewable.

■ Implementation of the county's decision is the election to incorporate, to set urban boundaries and to effect a transition from rural to urban land use. *See* OAR

---

[5] ORS 197.015(10)(a) provides:

"(10) 'Land use decision' means:

"(a) A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"A. The goals;

"B. A comprehensive plan provision; or

"C. A land use regulation; * * *

"* * * * *"

660-15-000 (Statewide Goal 14). It will have a significant impact if, as appears reasonably possible, the voters elect to incorporate:[6] land that could not before have been used for urban use would be available for future urban use.[7] We hold that the county's decision to authorize an incorporation election is a land use decision subject to LUBA review.

Although LUBA dismissed only for lack of jurisdiction, respondents had also challenged petitioners' standing before LUBA. They do so again here on three bases: (1) petitioners failed as a matter of law to establish standing; (2) the standards and procedures for granting standing to private parties to enforce the goals are vague, overbroad and without meaningful safeguards and therefore may not be constitutionally applied to burden respondents' rights of free religious exercise, speech, press and assembly; and (3) the goals lack narrow and objective standards that would permit their application to burden protected civil liberties. Respondents cite some 30 Oregon and federal constitutional provisions that allegedly are violated by granting petitioners' standing. Because we remand to LUBA and the issue may arise again, we consider respondents' "densepack" defense[8] and reject it.

■  As to whether petitioners have established their standing under Oregon Laws 1979, chapter 772, Section 4(2) (as amended), we remand to LUBA to determine the question in light of *Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982).

As to whether granting standing to petitioners would unconstitutionally violate respondents' exercise of their civil liberties, we think respondents confuse standing with a challenge on the merits of the incorporation issue. Respondents assert that petitioners' appeal is equivalent to requiring respondents to obtain a license before engaging

---

[6] It may even be probable, in light of the election to incorporate held May 18, 1982, at which 154 persons voted—unanimously—for incorporation.

[7] If the voters defeat incorporation, no land will be available for urban use. Although the latter would maintain the status quo, it would nevertheless have significant impact on future uses and planning activities.

[8] Not to be confused with a "blunderbuss attack," *Tillamook County v. LCDC,* 56 Or App 459, 461, 642 P2d 691, *rev den* 293 Or 373 (1982), or with similar attacks noted there.

in their activities. To an extent, of course, the land use laws do require some prior approval, but that requirement does not interfere unconstitutionally with respondents' liberties. The land use laws are permissible impositions of reasonable limitations designed to protect the public welfare. *See Christian Retreat Center v. Comm. for Wash. Co.*, 28 Or App 673, 680-81, 560 P2d 1100, *rev den* (1977), and serve a significant governmental interest. *See 1000 Friends v. LCDC*, 292 Or 735, 744-50, 642 P2d 1158 (1982). If they restrict First Amendment freedoms, they do so by time, place and manner restrictions that are not based on the content or subject matter of speech, at least so far as anything in the present record discloses.

Reversed and remanded.