Argued and submitted September 21, 1987, reversed and remanded for reconsideration
May 11, 1988

## 1000 FRIENDS OF OREGON et al,
*Petitioners,*

*v.*

## LAND CONSERVATION
## AND DEVELOPMENT COMMISSION
and
## HOOD RIVER COUNTY,
*Respondents.*

(84-ACK-388; CA A35098)

754 P2d 22

Richard P. Benner, Portland, argued the cause and filed the brief for petitioners.

Michael Reynolds, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Jeff Bennett, Assistant Attorney General, Salem.

No appearance for respondent Hood River County.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

### DEITS, J.

Petitioners seek review of LCDC's acknowledgment of Hood River County's comprehensive plan and land use regulations. All of their assignments are directed at LCDC's approval of the county's application of Goal 5 and OAR 660-16-010 to the Parkdale Lava Beds and the nearby springs and aquifer and of the zoning of that area to permit aggregate mining and processing as a conditional use. We reverse.

The issues turn principally on OAR 660-16-010, a section of LCDC's rule implementing Goal 5. It provides, in relevant part:

"Based on the determination of the economic, social, environmental and energy consequences, a jurisdiction must 'develop a program to achieve the Goal'. Assuming there is adequate information on the location, quality, and quantity of the resource site as well as on the nature of the conflicting use and ESEE consequences, a jurisdiction is expected to 'resolve' conflicts with specific sites in any of the following three ways listed below. Compliance with Goal 5 shall also be based on the plan's overall ability to protect and conserve each Goal 5 resource. The issue of adequacy of the overall program adopted or of decisions made under sections (1), (2) and (3) of this rule may be raised by the Department or objectors, but final determination is made by the Commission, pursuant to usual procedures:

"(1)  Protect the Resource Site: Based on the analysis of the ESEE consequences, a jurisdiction may determine that the resource site is of such importance, relative to the conflicting uses, and the ESEE consequences of allowing conflicting uses are so great that the resource site should be protected and all conflicting uses prohibited on the site and possibly within the impact area identified in OAR 660-16-000(5)(c). Reasons which support this decision must be presented in the comprehensive plan, and plan and zone designations must be consistent with this decision.

"* * * * *

"(3)  Limit Conflicting Uses: Based on the analysis of ESEE consequences, a jurisdiction may determine that both the resource site and the conflicting use are important relative to each other, and that the ESEE consequences should be balanced so as to allow the conflicting use but in a limited way so as to protect the resource site to some desired extent. To implement this decision, the jurisdiction must designate with

certainty what uses and activities are allowed fully, what uses and activities are not allowed at all and which uses are allowed conditionally, and what specific standards or limitations are placed on the permitted and conditional uses and activities for each resource site. Whatever mechanisms are used, they must be specific enough so that affected property owners are able to determine what uses and activities are allowed, not allowed, or allowed conditionally and under what clear and objective conditions or standards. Reasons which support this decision must be presented in the comprehensive plan, and plan and zone designations must be consistent with this decision."

After LCDC directed it to do so in a continuance order, the county included the site of the lava beds and springs in its inventory of Goal 5 resources. It then applied the Goal 5 process and made a so-called "3A" decision, pursuant to OAR 660-16-010(1), to protect the beds and the springs fully. Petitioners argue in their first assignment that, by allowing mining as a conditional use, the county *actually* made a "3C" decision to limit that conflicting use, pursuant to OAR 660-16-010(3), rather than prohibiting it pursuant to subsection (1). Petitioners maintain that, because the county *nominally* decided on the 3A option, its plan does present reasons to support that decision; however, the plan does not contain reasons, as required by the rule, to support the 3C decision which the county in fact made.

LCDC replies that the county's zoning ordinance allows mining and certain other uses which conflict with the resources to be conducted in the zone only after a determination that the uses will not "adversely impact" or destroy the resources. Consequently, LCDC argues, the county's actual 3C program is functionally equivalent to its nominal 3A program. Because conflicting uses are permissible only if they will not have an adverse impact on the resources, LCDC regards the county's regulations as preventing conflicts to the same extent as would an outright prohibition of conflicting uses. LCDC concludes:

"A 3A program requires all conflicting uses to be prohibited. OAR 660-16-060(1). LCDC, nonetheless, concluded that the * * * Zone is sufficient to resolve conflicts in a manner that the goal of a 3A program, protection of the resource site, is achieved. Hence, the 'reasons' Hood River County provided to justify its purported 3A program, and with which petitioner has expressed no disagreement, are 'consistent with [the

county's] decision' to zone the Parkdale Lava Beds and associated springs [as it did]. Petitioners' argument elevates form over substance and should be rejected."

■    We disagree with LCDC. OAR 660-16-010 requires planning jurisdictions to make a choice among the three options defined in its subsections and that that choice be supported by reasons presented in their plans. If, as LCDC does not dispute, the county has actually made a 3C decision, its stated reasons for a purported 3A decision cannot support the different decision which it really made. LCDC's argument disregards the fact that the county has provided LCDC with no reasons on which to base its acknowledgment of the 3C decision.

More fundamentally, LCDC is incorrect in its view that the stringent, but not absolute, limitations on conflicting uses under the county's ordinance and its *de facto* OAR 660-16-010(3) decision are the equivalent of the outright prohibition of conflicting uses for which a decision under OAR 660-16-010(1) calls. A limitation is *not* a prohibition. LCDC's conclusion that the "adverse impact" standard of the ordinance will have the same practical effect as a flat prohibition rests on a hypothesis about how the county will apply the ordinance in the future. However, as we concluded in *1000 Friends of Oregon v. LCDC (Morrow Co.)*, 88 Or App 517, 746 P2d 238 (1987), ORS 197.251 requires LCDC to determine compliance with the goals as of the time of acknowledgment and not on the basis of speculation that a facially noncomplying provision may be applied consistently with the goals and LCDC's rules. In *1000 Friends of Oregon v. LCDC (Linn Co.)*, 85 Or App 18, 735 P2d 645, *modified on other grounds,* 86 Or App 26, 738 P2d 215, *rev den* 304 Or 93, 742 P2d 48 (1987), we held that local land use legislation can qualify for acknowledgment without being so specific that it is *impervious* to future applications which violate the goals. This case fits within the *Morrow Co.* rather than the *Linn Co.* principle, because the county's legislation is not simply susceptible to erroneous applications; it is inconsistent on its face with LCDC's Goal 5 rule. The county has stated reasons to support a 3A decision, which requires that the conflicting uses be prohibited in the resource area, but its ordinance allows such uses in the area. OAR 660-16-010(1) expressly requires that "plan and zone designations must be consistent" with a 3A decision. The

county's zoning of the area is not consistent with its stated decision.[1] We agree with petitioners' first assignment.

We address petitioners' second and third assignments because of the likelihood that the same issues will arise on remand or in later proceedings. In their second assignment, petitioners assert that LCDC incorrectly based its approval of the county's Goal 5 program for protecting the lava beds and the springs, in part, on its finding that

> "there may be areas at sufficient distance and downhill from the springs which could be mined without * * * damage [to the springs] occurring."

Petitioners argue that that finding is unsupported by substantial evidence, that it has no analog in the county's own findings and that the county found that mining at the lava beds could damage on-site springs. LCDC agrees that there is no evidence to support its statement, but says that the statement was merely a "comment" and not a necessary finding. We agree with LCDC. However, we note for its guidance on remand that the comment appears to be almost totally irrelevant. If the county's program is found inadequate to protect identified resources at any location, it would be of only limited, if any, significance that mining at particular locations might not damage the resources.

█ Petitioners' final assignment is that the county's "adverse impact" test for disallowing mining in the resource area is not a "clear and objective" standard, as required by OAR 660-16-010(3). We disagree. OAR 660-16-005 provides that, to decide whether a use conflicts with a protected resource, a local government must determine whether the use, "if allowed, could negatively impact a Goal 5 resource site." The county's standard for determining whether a conflicting use may be permitted is, at the least, as clear and objective as the standard LCDC's rule establishes for determining whether a use is a conflicting one. We do not think that the "clear and objective" requirement of OAR 660-16-010(3) demands more clarity and objectivity by local governments than LCDC required of itself in articulating a substantive standard in

---

[1] LCDC's order states, *inter alia,* that the county's plan and zoning "should function to prohibit conflicting uses at this site *if conscientiously administered.*" (Emphasis supplied.)

another section of the same rule. In any event, it is difficult to conceive of a clearer and more objective standard than one which disallows conflicting uses if they will have *any* adverse impacts on identified resources.[2] There is no merit to petitioners' third assignment.

Reversed and remanded for reconsideration.

---

[2] Nothing in our discussion of this assignment of error should be understood as *our* interpretation of the county's ordinance. For purposes of discussing petitioners' contention that the ordinance lacks the requisite clarity and objectivity, we assume the correctness of their understanding that, under the county's standard, "no mining may take place if it would adversely impact the Lava Beds as a water source."