Argued and submitted January 3, on petition and on both cross-petitions, reversed and remanded with instructions to dismiss appeal February 21, reconsideration denied April 25, petition for review denied May 22, 1990 (310 Or 70)

# SENSIBLE TRANSPORTATION OPTIONS FOR PEOPLE (STOP) et al,
*Respondents - Cross-Petitioners - Cross-Respondents,*

*v.*

# METROPOLITAN SERVICE DISTRICT,
*Respondent - Cross-Petitioner - Cross-Respondent,*

*and*

# CITY OF BEAVERTON et al,
*Petitioners - Cross-Respondents.*

## (LUBA 89-030; CA A62687)

787 P2d 498

Jack L. Orchard, Portland, argued the cause for petitioners - cross-respondents. With him on the briefs was Ball, Janik & Novack, Portland.

Lawrence S. Shaw, Portland, argued the cause and filed the briefs for respondent - cross-petitioner - cross-respondent.

Keith A. Bartholomew, Portland, argued the cause and

filed the briefs for respondents - cross-petitioners - cross-respondents.

John M. Junkin, Washington County Counsel, David N. Noren, Assistant County Counsel, Hillsboro, and John L. DuBay, Chief Assistant Multnomah County Counsel, Portland, filed a brief *amici curiae.*

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of, respondent Metropolitan Service District (Metro) cross-petitions from and the other respondents[1] (respondents) separately cross-petition from LUBA's remand of Metro's "update" of its functional Regional Transportation Plan (RTP). *See* ORS 268.390(1) and (2). The update recommends that Washington County conduct appropriate studies and consider whether to amend its comprehensive plan to provide for the construction of a "Western Bypass" freeway corridor, part of which would be located outside the Metro urban growth boundary. Under the update, existing provisions of the RTP and an intergovernmental agreement between Metro and the county, the recommendation is contingent, *inter alia,* on a determination that the freeway project will be consistent with the statewide land use planning goals or, alternatively, on plan amendments or goal exceptions necessary to achieve consistency. If that condition precedent is not met, the recommendation cannot by its terms finally become a part of the RTP.

Respondents appealed the adoption of the update to LUBA and contended that Metro's findings in support of the update did not demonstrate that the freeway project would comply with Goals 3, 4, 5, 6, 11 and 14 or with analogous Metro goals and objectives. *See* ORS 268.380(1). Metro and petitioners responded that LUBA lacked jurisdiction[2] and that Metro was not required to demonstrate goal compliance for the freeway project in connection with the contingent recommendation adopted in the update. Rather, they argue, the county, Metro or the combination of them could make the necessary findings or take the necessary actions to satisfy the goals as part of any later decisions to include a final recommendation in the RTP or to amend the county's plan.

LUBA concluded that, notwithstanding the contingent nature of the recommendation, Metro is required to demonstrate compliance with Goals 11 and 14, which LUBA

---

[1] We refer to the parties by their designations in this court.

[2] Because we decide on an alternative ground that LUBA lacked jurisdiction, we do not address the reasoning by which LUBA concluded that it had jurisdiction. The basis for our decision also makes it unnecessary for us to differentiate between the parties' statewide goal arguments and those pertaining to the regional goals and objectives that LUBA concluded were the applicable regional ones.

identified as presenting regional concerns. However, it concluded that compliance with the other goals involved "site-specific" problems that could be resolved by the county at such time as it amended its plan to adopt the Western Bypass project. LUBA explained:

> "Much of the RTP Update (including the Western Bypass) is simply a *recommendation*. In other words, affected local cities and counties may accept Metro's recommendation, adopt appropriate goal findings in addition to those already adopted by Metro as part of the RTP Update, and include the recommendation in their comprehensive plans. When cities and counties proceed in this manner, the land use decision concerning the recommendation is complete when the required comprehensive plan amendments are adopted. However, for recommended projects, a local government remains free to reject the recommendation or to provide alternatives when it considers including the recommendation in its comprehensive plan. For recommended portions of the RTP Update such as the Western Bypass, Metro has adopted general goal findings and explicitly deferred the duty of finding the proposal complies with other applicable or potentially applicable goal requirements to Washington County to perform as part of its comprehensive plan amendment process.

> "* * * * *

> "Unlike cities and counties in other areas of the state, cities and counties within Metro's jurisdiction do not adopt a UGB. Within Metro's jurisdiction, the responsibility for justifying, adopting and securing acknowledgment of the metropolitan area UGB has been assigned to Metro. ORS 268.390(3). In assigning this responsibility to Metro, the legislature presumably determined adoption and administration of the metropolitan area UGB required Metro's unique regional perspective, rather than leaving adoption and administration of the UGB to the large number of cities and counties making up the metropolitan area.

> "In view of Metro's unique authority and responsibility for establishing and administering the regional UGB in conformance with Goal 14, we believe the threshold determination concerning applicability of Goal 14 to the Western Bypass must be made by Metro. This determination is not properly deferred to Washington County, notwithstanding Metro's retention of ultimate authority to override Washington County's determination concerning the applicability of Goal 14 to the Western Bypass. [*See* ORS 268.390(4).]

"Whether the Western Bypass may be located within a corridor outside the acknowledged UGB is an issue squarely presented in petitioners' challenge to the RTP Update. Unlike petitioners' other goal challenges, the Goal 14 issue (i.e. whether a freeway crossing rural land is justified in view of other possible options within the UGB) is *not* primarily a site specific issue; rather, it is primarily a regional issue. We conclude Metro must answer this issue before including the Western Bypass in the RTP Update, even if it is included only as a recommendation.

"Similarly, if Metro concludes that an exception to Goal 14 or an amendment to the UGB is required, Metro, rather than Washington County, is the proper body to determine this regional issue as well. Metro, as the local government that * * * justified and obtained acknowledgment of the UGB, is the appropriate body to determine whether a UGB amendment or Goal 14 exception can be justified." (Emphasis in original; footnotes omitted.)

Petitioners argue that all goal compliance questions may be resolved by the county at the time that it amends its plan and that LUBA, therefore, erred in requiring Metro to make determinations regarding Goal 11 and Goal 14 compliance. Respondents take the opposite view in their cross-petition and contend that Metro was required to demonstrate compliance with all goals in adopting the update. Therefore, respondents contend, LUBA erred by not requiring Metro to make compliance findings for Goals 3, 4, 5 and 6, as well as for Goals 11 and 14. Metro's view in its cross-petition is somewhere in between those positions. It argues that, under ORS 268.390(3),[3] it is responsible for showing that the Western Bypass project will comply with Goal 14; it maintains, however, that compliance with all other goals must be demonstrated by the county in connection with the plan amendment process and that Goal 14 compliance does not have to be demonstrated by Metro until a final RTP recommendation is adopted. Metro therefore contends that LUBA erred by requiring it to be the deciding entity on Goal 11 compliance

[3] ORS 268.390(3) provides:

"A district council shall:

"* * * * *

"(3) Adopt an urban growth boundary for the district in compliance with applicable goals adopted under ORS chapters 196 and 197."

and by requiring it to make any dispositive statewide or local goal compliance findings in connection with the contingent recommendation in the update.

We conclude that the contingent recommendation in the update is not a final land use decision under ORS 197.015(10) and that LUBA therefore lacked jurisdiction over the appeal under ORS 197.825. Given that conclusion, we do not reach the question of whether LUBA was correct in allocating responsibility to Metro for determining compliance with Goals 11 and 14, on the theory that they raise regional issues, and to the county to resolve the Goals 3, 4, 5 and 6 issues, on the theory that those goals present site-specific concerns to be addressed in the comprehensive plan amendment process. Assuming the correctness of LUBA's dichotomy, it does not explain why compliance with *any* of the goals must be shown at the tentative recommendation stage, regardless of which entity may ultimately be responsible for establishing and finding compliance.

LUBA appears to have considered it possible that, under the agreement between Metro and the county, there could be a set of circumstances under which Metro might never be called upon to decide whether the project satisfies Goal 14. The agreement provides that the county is to determine whether the project complies with Goal 14; arguably, Metro would not be *contractually* required to adopt a UGB amendment, take a Goal 14 exception or make any decision regarding Goal 14 compliance if the county answered the threshold question affirmatively. *But see* ORS 268.390(4). However, if the conditions of the agreement are inconsistent with applicable statutes, goals or other requirements, the appropriate occasion for redress would be in an appeal from the county's final decision adopting the compliance finding or a decision by Metro adopting a final Western Bypass recommendation.[4]

This case differs from *1000 Friends of Ore. v. Wasco Co. Court,* 62 Or App 75, 659 P2d 1001, *rev den* 295 Or 259 (1983), where we held that the county's decision to call an incorporation election was appealable to LUBA, because, although not the culmination of the incorporation process, "it

---

[4] The validity of the agreement is not independently before us here.

is the final quasi-judicial, discretionary decision that the county can make on application of the goals to incorporation and as to incorporation itself." 62 Or App at 80-81. *See also 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985). Here, by contrast, the decision cannot lead to land use effects without further appealable land use decisions by Metro of the county.[5]

Respondents also rely on *1000 Friends of Oregon v. LCDC (Hood River Co.),* 91 Or App 138, 754 P2d 22 (1988), and related cases, where we held that comprehensive plan or land use regulatory provisions that were facially inconsistent with the goals at the time when acknowledgment was sought could not receive acknowledgment "on the basis of speculation that [they] may be applied consistently with the goals." 91 Or App at 142. Respondents analogize those cases to the present one and contend that Metro's update must comply with the goals now, rather than await future study and actions by Metro or the county to determine or achieve compliance. The analogy does not succeed. The plans and regulations considered in *Hood River Co.* and similar cases were final and were capable of immediate application to land use activities in the jurisdictions that enacted them. Those cases do not stand for the proposition that a proposal must be found to comply with the goals before the decisions necessary to adopt it finally—let alone to determine if it complies with the goals or to bring it into compliance—have been made.

On the petition and on both cross-petitions, reversed and remanded with instructions to dismiss appeal.

---

[5] The jurisdictional holding in *Wasco Co. Court* was based on the "significant impact test" rather than on the "land use decision" test of ORS 197.015(10) and ORS 197.825. However, the totally contingent nature of the update is as inconsistent with LUBA's having jurisdiction under the significant impact test as under the statutory test. *See Hemstreet v. Seaside Improvement Commission,* 93 Or App 73, 761 P2d 533 (1988).