Argued and submitted September 25, affirmed November 15, 1995

# CENTRAL EASTSIDE INDUSTRIAL COUNCIL,
an Oregon non-profit corporation,
Burns Brothers, Inc., an Oregon corporation,
Jack Burns, Bruce Burns, Bolliger & Sons, Inc.,
an Oregon corporation,
Earl Bolliger, Speed's Automotive and Towing, Inc.,
an Oregon corporation,
Harold Coe, Oregon Trucking Association, Inc.,
an Oregon non-profit corporation,
Wentworth Chevrolet, Co., an Oregon corporation,
Greg Wentworth, Milcor, Inc., an Oregon corporation,
dba The Moore Company,
Randy Miller, Kathy Galbraith,
Robert Butler, Freightliner Corporation,
a Delaware corporation,
Northwest Wholesale Distributors, Inc.,
an Oregon corporation,
dba Stark's Vacuum Cleaners Sales & Service,
Jim Stark, Ronald Gould, Ed Samons and Bob Nagel, Jr.,
*Respondents,*

*v.*

## CITY OF PORTLAND,
*Petitioner.*

(LUBA 93-221; CA A89557)

905 P2d 265

Michael A. Holstun, Senior Deputy City Attorney, argued the cause and filed the brief for petitioner.

Jeffrey L. Kleinman argued the cause for respondents. With him on the brief were B. B. Bouneff and Bouneff & Chally.

Before Deits, Presiding Judge, and De Muniz and Armstrong, Judges.

DEITS, P. J.

## DEITS, P. J.

In *Central Eastside Industrial Council v. City of Portland*, 128 Or App 148, 875 P2d 482 (1994), we reversed and remanded LUBA's decision that it lacked jurisdiction over petitioners'[1] appeal from an action of the City of Portland. On remand, LUBA held that it had jurisdiction and remanded the matter to the city. The city seeks review, and we affirm.

The basic facts, as set out in our first opinion, are:

"In 1993, the City of Portland adopted a resolution requesting the Oregon Department of Transportation (ODOT) not to build the 'Water Avenue Ramp' (ramp) as a means of freeway access and, instead, to apply funding and development planning to other transportation alternatives. Petitioners appealed to LUBA, contending that the city's comprehensive plan 'mandates' the ramp, and that the resolution therefore violates the plan. LUBA concluded that, because the resolution is simply a recommendation from one governmental body to another, it is not a final land use decision. ORS 197.015(10)(a)(a). LUBA therefore held that it lacked jurisdiction, ORS 197.825, and granted the city's motion to dismiss the appeal." 128 Or App at 151.

After distinguishing the recommendation and the facts in this case from those in *Sensible Transportation v. Metro Service Dist.*, 100 Or App 564, 787 P2d 698, *rev den* 310 Or 70 (1990), we concluded that the city's recommendation *could* be a final reviewable "land use decision" under ORS 197.015-(10)(a)(A)(ii). We noted, however, that LUBA had not answered the questions necessary to make the reviewability determination, and we remanded with the instructions:

"At least two questions must be considered: Does the comprehensive plan require the building of the ramp, or contain other requirements to which the recommendation is contrary or the substance of which applies to the recommendation? If so, are there further actions by the city or other bodies that *must* occur before the ramp project is rejected or abandoned and that must culminate in a decision by the city to amend the plan or otherwise apply and demonstrate

---

[1] In the interest of consistency among the various opinions by LUBA and us in this case, we use the term "petitioners" to refer to the opponents of the city's action, although they are the respondents before us now.

compliance with it? If the answer to the first question is 'yes' and the answer to the second is 'no,' the present decision is final and reviewable." 128 Or App at 153-54 (emphasis in original; footnote omitted).[2]

On remand, LUBA denied the city's motion to dismiss, and gave this answer to the first question in our earlier opinion:

"As we understand the Court of Appeals, if the city's comprehensive plan includes any provision the substance of which applies to a recommendation not to build a ramp, the answer to the court's first question is 'yes.' We believe Central City Plan (CCP) Policy 20 is such a provision. CCP [Policy 20] provides:

" *'Preserve the Central Eastside as an industrial sanctuary while improving freeway access* and expanding the area devoted to the Eastbank Esplanade.' * * *

"A requirement to improve freeway access from the Central Eastside Industrial district is clearly applicable to a recommendation not to build the disputed freeway access ramp." (Emphasis in original.)

LUBA concluded that it had jurisdiction under the questions we had posed and, on the merits, accepted some of petitioners' arguments and remanded.

In its assignment of error to us, the city challenges only LUBA's conclusion regarding the first question in our opinion. It maintains, *inter alia*, that LUBA was incorrect in determining that CCP Policy 20 is, in the words of our opinion, a "requirement * * * the substance of which applies to the recommendation." The city does not dispute that CCP Policy 20 contains plan requirements or that the ramp in question, if built, could provide improved freeway access in the Central Eastside area, in keeping with Policy 20. However, the essence of the city's argument is that the "policy is general in nature," that neither it nor any other plan provisions specifically require that the Water Avenue ramp be the means of achieving the improved access, and that that particular ramp "is simply one way that has been proposed to achieve that part of the three-part directive in CCP Policy 20." The city further explains:

---

[2] Greater detail concerning our reasoning is not necessary to an understanding of *this* opinion.

"Returning to the critical language in the Court's first question, LUBA was directed to determine whether the comprehensive plan contains 'requirements * * * the substance of which applies to the recommendation [that ODOT not build the Water Avenue on-ramp].' This part of the first question poses a more narrow inquiry than LUBA understood it to pose. It simply asks whether there are comprehensive plan requirements that require the city to justify a decision to recommend that ODOT not build the Water Avenue on-ramp." (Footnote omitted.)

Although the city couches its arguments regarding CCP Policy 20 in various terms, their dominant and recurring theme is that the policy does not apply to the recommendation because it is general in the objective that it states and does not indicate that the proposed Water Avenue ramp must be the means of achieving that objective. Hence, the city reasons, the policy does not "apply to the recommendation" within the meaning of our question.

We disagree with the city for three reasons. First, our question had three parts: whether the plan affirmatively requires the building of the ramp, whether the negative recommendation about the ramp is directly contrary to the plan and, finally, whether any plan requirement "*applies* to the recommendation*." (Emphasis supplied.) If the city's understanding that no affirmative answer to part three can be based on a plan provision that does not specifically mention or otherwise mandate the Water Avenue access location were correct, the first two parts of the question would have been superfluous. They call for specificity, one in terms of an affirmative requirement and the other in terms of direct inconsistency. The third part, by its terms, relates to the *applicability* of a plan requirement to the recommendation and not to any specific plan *mandate* for an affirmative recommendation.

Our second reason is related. ORS 197.015-(10)(a)(A)(ii) includes in the definition of "land use decisions" local government actions that concern the "application of * * * [a] comprehensive plan provision." The city posits that, somehow, the generality of CCP Policy 20 prevents it from being an applicable land use decisional standard with respect to the Water Avenue ramp and, presumably, other specific sites. However, the quintessence of a comprehensive plan is

its generality and its capability of being applied to specific decisions and circumstances. ORS 197.015(5); *Baker v. City of Milwaukie*, 271 Or 500, 533 P2d 772 (1975).

CCP Policy 20 aptly illustrates the point. It states a general policy of improving freeway access in the area and, as such, it *applies* to the various specific ways in which that requirement might be implemented. The fact that the provision does not expressly require that any given means be the chosen one does not alter the fact that it is applicable in considering which of the possible means should be chosen. A corollary follows from that point: although it may be true that CCP Policy 20 does not require a particular access location and that it can be satisfied in more than one way, it nevertheless must be satisfied in some way, and the city's selection or rejection of specific proposals must necessarily take the plan requirement into account.

Thirdly, and again relatedly, the city's contention that CCP Policy 20 does not require the selection or consideration of this specific ramp can as readily be made with respect to every other specific access proposal, until all possible means of complying with the plan requirement are eliminated. The effect of that, of course, would be precisely what our first opinion identified as the ultimate risk in treating the "recommendation" as something other than a reviewable "land use decision": A requirement could be effectively deleted from the plan, without an amendment or any other reviewable action ever being taken by the city or any other body.

In addition to its arguments based on the text of the plan policy, the city also argues that reading the question in our first opinion as LUBA did and we do would require the city "to comb its comprehensive plan for arguably relevant general plan provisions every time it wishes to make a recommendation to another body of government that a facility not be constructed." There are two answers to that argument. First, neither our earlier opinion nor this one arrives at any jurisdictional conclusion about any recommendation except the one in question. *Compare Sensible Transportation.* Second, we find nothing disturbing about the proposition that, under these circumstances and similar ones, the city should

expend appropriate efforts to assure that its actions comply with its comprehensive plan.

We agree with LUBA that CCP Policy 20 applies to the recommendation. The city demonstrates no error.[3]

Affirmed.

---

[3] Given the grounds for our holding, we do not reach the question of whether other plan provisions discussed by the parties might also apply and provide a basis for LUBA's jurisdiction.

We emphasize that our discussion and our holding relate only to whether the plan policy is applicable to the recommendation and, therefore, whether the recommendation constitutes a land use decision within LUBA's jurisdiction. We suggest no view about *how* the policy applies or about whether the recommendation is consistent with it.

We have indicated that the generality of the terms in which the policy is stated does not make it *inapplicable* to specific proposals. However, we do not imply that the general nature of the policy cannot affect how specific a showing must be made in determining whether the rejection of any given proposal *complies* with the policy.