Argued and submitted September 19, reversed and remanded
November 23, 2016

ROGUE ADVOCATES,
Jeff Gilmore, and Jeannie Gilmore,
*Respondents,*
*and*

Elizabeth COKER,
*Petitioner below,*

*v.*

JACKSON COUNTY,
*Respondent below,*
*and*

Donald E. ROWLETT
and Jean Rowlett,
*Petitioners.*

Land Use Board of Appeals
2015097; A162747

385 P3d 1262

H. M. Zamudio argued the cause for petitioners. With her on the briefs was Huycke O'Connor Jarvis, LLP.

William H. Sherlock argued the cause for respondents. With him on the brief was Hutchinson Cox.

Before Egan, Presiding Judge, and Lagesen, Judge, and Schuman, Senior Judge.

**LAGESEN, J.**

Petitioners, who own land in Jackson County (the county), seek judicial review of a final order of the Land Use Board of Appeals (LUBA). In that order, which resolved an appeal brought by respondents Rogue Advocates, Jeff Gilmore, and Jeannie Gilmore,[1] LUBA remanded the county's decision to stipulate to the amendment of a prior declaratory judgment concerning petitioners' rights to develop their land. LUBA did so based on its determination that, in entering the stipulation, the county approved alterations of a nonconforming use of petitioners' property without applying the governing land use laws. In so doing, LUBA rejected petitioners' contention that respondents' appeal was not timely filed under ORS 197.830(3) and that LUBA, therefore, lacked jurisdiction over it. *See Wicks-Snodgrass v. City of Reedsport*, 148 Or App 217, 224, 939 P2d 625, *rev den*, 326 Or 59 (1997) (LUBA lacks jurisdiction over appeal that is not timely filed under ORS 197.830). On review, petitioners challenge that determination, as well as other aspects of LUBA's ruling. We conclude that LUBA's determination that respondents' appeal was timely under ORS 197.830(3)(b) is not supported by substantial evidence or substantial reason and, accordingly, reverse and remand to LUBA. Except to the extent discussed below, we reject petitioners' other challenges to LUBA's order without further written discussion.

## BACKGROUND

Petitioners purchased their property in 1969 and 1970. Soon thereafter, the county zoned the property for the first time, designating it for agricultural use. Petitioners wished to build and operate a guest ranch on the property, so they applied for—and were denied—a conditional use permit for the guest ranch. Petitioners then sued the county in circuit court seeking declaratory and injunctive relief that would allow them to build a guest ranch. In 1975, following a trial, the court found in petitioners' favor and entered a judgment declaring that petitioners were authorized to use

---

[1] Elizabeth Coker also joined the appeal before LUBA, but LUBA dismissed her from the case based upon its determination that she lacked standing to pursue the appeal before LUBA. Coker has not sought review of that decision and is not party to the proceeding before us.

their property for a 60-unit campground, a general store, a chapel, a lodge with a bunkhouse, a replica frontier village, six log guest houses, and five other "miscellaneous structures."

In 1987, petitioners and the county stipulated to the amendment of the court's declaratory judgment. The circuit court accepted the stipulation (the First Stipulation) and entered an amended declaratory judgment setting forth petitioners' rights with respect to developing their property. As amended in accordance with the First Stipulation, the judgment described with greater specificity the nonconforming uses permitted on petitioners' property. It also set a deadline by which petitioners were required to develop their land in accordance with the provisions of the judgment:

> "[T]he rights to make further developments for nonconforming uses within the terms of this Decree shall expire January 1, 2007, and further developments beyond that date shall be subject to the limitations of the land use regulations, if any, then in effect with respect to the zone or district within which the property is situated[.]"

At some point after the expiration of their rights under the terms of the First Stipulation, petitioners approached the county again about negotiating another stipulated amendment to the judgment. On December 5, 2013, the board of commissioners for the county approved an order authorizing the county administrator to work with the court and the petitioners to do so. Over the next few weeks, petitioners and the county reached an agreement and executed a new stipulation (the Second Stipulation). The court accepted the Second Stipulation and, as it had done at the time of the First Stipulation, entered an amended judgment (the Second Stipulated Amended Judgment) based on the Second Stipulation on December 30, 2013.[2] As amended to reflect the Second Stipulation, the judgment stated that it "revived any development rights that otherwise had expired under the First Stipulation." It also "clarified" that the lodge and bunkhouse mentioned in the first two iterations of the

---

[2] LUBA's order states that the Second Stipulated Amended Judgment was entered on December 20, 2013, but the copy of the judgment in the record reflects that the circuit court signed it on December 30, 2013.

declaratory judgment "includes 'overnight guest accommo-
dations,'" and expanded the area in which petitioners could
build.

Nearly two years later, on November 10, 2015,
respondents hired an attorney, Sherlock, to investigate a
proposed development on petitioners' land that, according
to a website, included a 200-unit hotel, and was to be called
"New Paradigm Ranch." On November 11 or 12, Sherlock
contacted the county planning department to inquire about
the proposed development advertised on the website. On
November 16, 2015, the county called Sherlock and informed
him that the planned development was allowed under the
Second Stipulation. Sherlock obtained a copy of the Second
Stipulation and shared it with his client.

On December 7, 2015, respondents appealed the
Second Stipulation[3] to LUBA. On January 25, 2016, respon-
dents appealed to LUBA the board of commissioners' 2013
order authorizing the planning director to negotiate with
petitioners to amend the judgment. Respondents contended
that the county failed to comply with applicable land use
laws in approving the alterations of the nonconforming uses
allowed on petitioners' property. Petitioners intervened and
moved to dismiss the appeal as to each order. Pertinent to
the issue before us, petitioners argued that respondents
did not demonstrate that they had timely filed the appeal
"[w]ithin 21 days of the date [they] knew or should have
known" of the challenged decisions, as required by ORS
197.830(3)(b).

LUBA granted respondents leave to submit evi-
dence to address their standing and whether the appeal

---

[3] We note that, before us, petitioners argue that respondents appealed the
circuit court's *amended judgment* to LUBA, and that LUBA erroneously and *sua
sponte* "recharacterized the decision challenged on appeal" as the county's deci-
sion to enter into the Second Stipulation. Petitioners argue further that LUBA
lacked jurisdiction over the appeal because LUBA does not have jurisdiction to
review circuit court judgments.

Based on our review of the record, we reject that argument without extended
written discussion. The Notice of Intent to Appeal indicated respondents were
appealing the "land use decision" of the county embodied in the Second Stipulated
Amended Judgment, that is, the Second Stipulation. That designation adequately
indicated that respondents were appealing the county's decision to enter the stip-
ulation, rather than the circuit court's judgment based on that stipulation.

was timely. To address timeliness, respondents submitted the declaration of their attorney, Sherlock. In that declaration, Sherlock stated that he contacted the county planning department on November 11, 2015, about "when and how Jackson County approved a proposed 200-unit hotel, along with other resort related improvements, as represented on a web site for the 'New Paradigm Ranch' luxury eco-resort" on petitioners' property. According to Sherlock, in response to his inquiry, the county informed him of the Second Stipulation on November 16, 2015, 21 days before the date on which respondents filed their appeal. Sherlock attached his billing records for respondent Rogue Advocates covering the time period from November through December 2015. Those records reflect that, on November 10, 2015, Sherlock had a telephone conference with his client regarding the development on petitioners' property and reviewed the website for the proposed development on petitioners' property. With regard to the timeliness of the appeal of the board of commissioners' order, Sherlock stated in his declaration that "the first time I (or any of the [respondents]) had knowledge of [that] Order" was on January 14, 2016, when the county disclosed that order in the course of preparing the record for the appeal of the Second Stipulation.

In response, petitioners argued that the evidence that respondents' *attorney* did not know about the Second Stipulation did not support the inference that respondents, themselves, did not have knowledge of the Second Stipulation. Alternatively, petitioners argued that, even if respondents' attorney's lack of actual knowledge about the Second Stipulation was imputed to respondents, respondents' evidence was insufficient to establish that respondents had appealed within 21 days of the date that they were on inquiry notice of the county's decision. Petitioners pointed out respondents' own evidence that they conferred with Sherlock about the development on petitioners' land, and claimed that that evidence demonstrates that respondents were on inquiry notice no later than November 10, 2015. Petitioners then argued that, absent evidence about when respondents *first* learned of the development that they discussed with their attorney on November 10, the record was insufficient to support a finding that respondents timely

filed their appeal of the county's decision approving that development within 21 days of the date on which respondents were on inquiry notice of that decision.

LUBA dismissed the appeal of the commissioners' order authorizing the planning director to negotiate with respondents on the ground that that order was not appealable. As to the appeal of the Second Stipulation, LUBA concluded that it was timely filed. Addressing whether the appeal was filed within 21 days of the date that respondents had actual knowledge of the Second Stipulation, LUBA found that "[b]ecause [respondents] hired Sherlock to discover the county decision, if any, that authorized the disputed development of the subject property, an appropriate inference is that [respondents] had no more knowledge of the Second Stipulation than their attorney." Thus, LUBA found that respondents did not have actual knowledge of the Second Stipulation until Sherlock found out about it November 16, 2015, and had filed their appeal within 21 days of that date.

Addressing whether respondents were on inquiry notice before that date, such that, under ORS 197.830(3)(b), the 21-day period for appealing began to run before respondents had actual notice of the Second Stipulation, LUBA reasoned that, even if respondents were on inquiry notice regarding the Second Stipulation before November 16, 2015, the appeal was timely because Sherlock made reasonable efforts to discover that decision once his clients conferred with him. In reaching that conclusion, LUBA relied on its own decision in *Rogers v. City of Eagle Point*, 42 Or LUBA 607, 616 (2002). In that decision, LUBA explained the operation of ORS 197.830(3)(b) this way:

> "[I]t is clear under ORS 197.830(3)(b) that where a petitioner does not have knowledge of the decision, but observes activity or otherwise obtains information reasonably suggesting that the local government has rendered a land use decision, the petitioner is placed on inquiry notice. If the petitioner makes timely inquiries and discovers the decision, the 21-day appeal period begins on the date that the decision is discovered. Otherwise, the 21-day appeal period begins to run on the date the petitioner is placed on inquiry notice."

In addition to concluding that the appeal was timely, LUBA concluded that the county's decision to stipulate to the amendment of the judgment, rather than the circuit court judgment itself, was the decision on review, and also that respondents sufficiently demonstrated that they had standing to challenge the county's decision. LUBA rejected petitioners' remaining procedural arguments and, ultimately, entered a final order remanding the decision to the county to apply applicable land use regulations in making it.

Petitioners timely petitioned us for review of LUBA's final order under ORS 197.850. On review, they reiterate many of the arguments they made to LUBA. As noted, we write to address petitioners' challenge to the timeliness of respondents' appeal to LUBA, rejecting all other arguments without written discussion.

## ANALYSIS

We review LUBA's determination that the appeal was timely to determine whether LUBA correctly applied the applicable law, and whether the order is "supported by substantial evidence in the whole record as to facts found by the board" in making its determination that the appeal was timely filed. ORS 197.850(9)(a) and (c).[4] A finding of fact is

---

[4] ORS 197.850(9) provides, in relevant part:

"The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure is not cause for reversal or remand unless the court finds that substantial rights of the petitioner were prejudiced thereby;

"* * * * *

"(c) The order is not supported by substantial evidence in the whole record as to facts found by the board under ORS 197.835 (2)."

LUBA's factual findings as to whether an appeal was timely filed are "facts found by the board under ORS 197.835(2)." That provision authorizes the board to make findings of fact related to standing and other procedural matters not shown in the record of the local governmental decision. Under ORS 197.850(9)(c), where LUBA itself engages in fact finding, we review those findings for substantial evidence. By contrast, under ORS 197.850(a), where LUBA has review of a local government's findings of fact, we review to determine whether LUBA "misunderstood or misapplied" the substantial evidence standard of review. *See Younger v. City of Portland,* 305 Or 346, 358 752 P2d 262 (1988) (noting the difference between judicial review of findings of fact by LUBA and judicial review of LUBA's review of a local government's findings of fact).

supported by substantial evidence if the record, viewed as a whole, would permit a reasonable person to make that finding. *Younger v. City of Portland*, 305 Or 346, 360, 752 P2d 262 (1988). In addition, the substantial evidence standard of review includes a substantial reason requirement. To satisfy that requirement, an agency order must supply an explanation connecting the facts of the case and the result reached. *Jenkins v. Board of Parole*, 356 Or 186, 214, 335 P3d 828 (2014) (the requirement of substantial reason inheres in the substantial evidence standard of review).

Here, petitioners do not argue that LUBA misunderstood the applicable law, and the parties appear to agree on what that law is. The parties also appear to agree that ORS 197.830(3)(b) governs, and required respondents to file their appeal within 21 days of the date respondents "knew or should have known" about the Second Stipulation. In addition, the parties appear to agree that LUBA's construction of ORS 197.830(3)(b) in *Rogers* is correct as a legal matter. In particular, petitioners do not appear to dispute LUBA's conclusion in *Rogers* that, once a person is on inquiry notice of a land use decision, reasonable inquiry into whether a land use decision occurred tolls the 21-day limitation period from the time the affected party "observes activity or otherwise obtains information reasonably suggesting that the local government has rendered a land use decision" until that party discovers that the land use decision was made. Finally, the parties agree that the timely filing of a LUBA appeal is a jurisdictional requirement and that, as a consequence, respondents bore the burden of proving that the appeal was timely filed once petitioners raised the issue. *See Billington v. Polk County*, 299 Or 471, 475, 703 P2d 232 (1985) (the burden of establishing LUBA's jurisdiction is on the party seeking to invoke it).

In view of the parties' apparent agreement on the applicable legal standards, we assume without deciding that the parties' understanding of the operation of ORS 197.830(3)(b) is the correct one, and address whether, in view of that understanding of the law, LUBA's determination that the appeal was timely filed is supported by substantial evidence. We conclude that it is not.

Under LUBA's decision in *Rogers*, to demonstrate that their appeal was timely filed under ORS 197.830(3)(b), respondents had the burden of proving that they filed it within 21 days of the date that they were on inquiry notice of the Second Stipulation or within 21 days of the date on which they had actual knowledge of that decision, whichever date was earlier. If respondents were on inquiry notice of the decision before they were on actual notice of that decision and, from that point in time, made timely efforts to discover the decision, those inquiries tolled the limitation period, making respondents' appeal timely if it was filed within 21 days on which they had actual notice. *Rogers*, 42 Or LUBA at 616. Absent such inquiries, the 21-day period expired 21 days after the date that respondents were on inquiry notice of the decision. *Id.*

LUBA first determined that the appeal was timely filed by inferring that respondents did not have actual knowledge of the Second Stipulation until November 16, 2015, the date on which their attorney found out about it. LUBA thought that inference "appropriate" because respondents would not have hired an attorney to "discover" the decision if they in fact knew about the decision already. We disagree. On this record, it is entirely speculative as to why respondents chose to retain their attorney when they did. Respondents submitted no evidence on that point and, in particular, submitted no evidence about what and when they knew of the Second Stipulation, and made no affirmative representations that they did not know about the Second Stipulation before November 16, 2015.

The insufficiency of respondents' evidence relating to the timeliness of the appeal is highlighted by the evidence that respondents submitted to establish that their other appeal—of the commissioners' order authorizing the planning director to negotiate with respondents—was timely. As to that order, Sherlock stated affirmatively in his declaration that neither he nor respondents knew about that order until January 2016; however, Sherlock's declaration omitted similar representations regarding respondents' knowledge of the Second Stipulation. Given those evidentiary omissions, it is as plausible on this record that respondents knew about the decision for some time, waited to see what petitioners would

do, and retained an attorney only after it looked like petitioners were moving forward with the development authorized by the Second Stipulation, as it is that respondents did not find out about the Second Stipulation until their lawyer found it. As a result, LUBA's finding that respondents did not know of the Second Stipulation until November 16, 2015, is not one that a reasonable person could reach on the slim evidentiary record respondents produced on the issue and, for that reason, is not supported by substantial evidence.

Moreover, even if we were to accept LUBA's finding that respondents did not have actual knowledge of the Second Stipulation until their attorney discovered it, LUBA's conclusion that the appeal period did not begin to run until that date is not supported by substantial reason. LUBA reasoned that, even if respondents were on inquiry notice earlier than that date, Sherlock's efforts to discover the Second Stipulation tolled the 21-day period until November 16, 2015, under *Rogers*. But that reasoning assumes that respondents contacted Sherlock promptly once they were on inquiry notice of the Second Stipulation, and did not wait more than 21 days to do so, thereby causing the appeal period to lapse. *See id.* (explaining that appeal period runs from date on which appellant was on inquiry notice of a decision when the appellant does not make timely efforts to discover the decision). In other words, under *Rogers*, if respondents were on inquiry notice of the Second Stipulation more than 21 days before they contacted Sherlock, then the appeal period under ORS 197.830(3)(b) expired before Sherlock even began his investigation, and respondents' appeal was untimely notwithstanding Sherlock's efforts. But LUBA made no factual findings about the date on which respondents were placed on inquiry notice and, in any event, respondents submitted no evidence that would permit such findings one way or the other, although petitioners' arguments put the point at issue. Absent affirmative findings as to when respondents were first put on inquiry notice of the Second Stipulation and how long respondents waited to contact Sherlock after they were put on inquiry notice, LUBA's conclusion that Sherlock's efforts tolled the limitations period until November 16, 2015, does not rationally follow from the facts that LUBA found and, therefore, is not supported by substantial reason.

For the foregoing reasons, LUBA's determination that the appeal was timely filed is not supported by substantial evidence or substantial reason. We therefore reverse and remand for LUBA to dismiss the appeal, unless LUBA exercises its discretion under ORS 197.835(2) and OAR 661-010-0045 to entertain a motion to take additional evidence.

Reversed and remanded.