Argued and submitted on briefs November 8, 1984, remanded to LUBA July 23, reconsideration allowed, designation of prevailing party amended to award costs to neither party September 17, 1985

BILLINGTON et al,
*Petitioners on Review,*

*v.*

POLK COUNTY,
*Respondent on Review.*

(TC 83-072; CA A31169; SC S30929)

703 P2d 232

Richard C. Stein, Salem, argued the cause for petitioners

on review. With him on the petition was Ramsay, Stein, Reibleman & Myers, Salem.

Michael F. Najewicz, Dallas, Polk County Legal Counsel, filed the brief and argued the cause for respondent on review.

CAMPBELL, J.

## CAMPBELL, J.

The issue in this case is whether the Land Use Board of Appeals (LUBA) has jurisdiction to review a county decision to vacate a portion of a county road.

In June 1983, the Polk County Board of Commissioners (Board) pursuant to ORS 368.326, *et seq* (Vacation of County Property) vacated the westerly 20 feet of a 40 foot wide dead-end roadway known as Clearview Orchards Road. As a part of that decision, the Board found that the road vacation was not a land use decision. However, that decision was appealed by the Billingtons to LUBA. The Billingtons owned land abutting a portion of the east boundary of the roadway and had opposed the vacation at the county hearings. In February 1984, LUBA determined that the decision to vacate the road was a land use decision within the meaning of ORS 197.015(10) and remanded to the Board for further findings. LUBA's decision was appealed by the Board to the Court of Appeals. The Court of Appeals, based on the dissenting LUBA opinion, reversed and held that the decision to vacate the road was not a land use decision and that LUBA therefore lacked jurisdiction. *Billington v. Polk County,* 68 Or App 914, 683 P2d 568 (1984). We accepted review to determine whether LUBA's jurisdiction to review local road vacation decisions is "land use decisions" must be decided on the facts of each case or whether LUBA has jurisdiction of all such decisions as a class. We remand to LUBA to apply the appropriate test to determine if the county's decision was a land use decision.

In 1911, a subdivision called Clear View Orchards was established. At the time of recording the subdivision plat, a 40 foot right of way running north and south was dedicated "to the use of the public as highways." At that time, the roadway was approximately 5,227 feet long. In 1960 the southerly 3,821 feet of the roadway were vacated. Of the remaining 1406 feet of roadway, only the easterly 20 feet have ever been used for road purposes. The westerly 20 feet of the right-of-way have never been used for road purposes and that portion of the right-of-way is occupied by fence posts, utility poles, trees, gardens and other obstructions. The sole access to Clearview Orchards Road is by Rural Road 208 which is 890 feet long and only 20 feet wide. The traveled portion of Clearview Orchards Road is not maintained by the county and

the county has not and does not expend any money on the road for any purpose. The road serves only six residences and dead-ends at the Billingtons' north property line. All of the property surrounding the roadway is zoned exclusive farm use (EFU).[1]

Petitioners advance two theories which they assert make the Board's decision a land use decision: (1) that the Board decision was a land use decision as defined by ORS 197.015(10)(a)(A)(ii) because any road is a component in the local government's overall transportation plan and thus vacation involves application of comprehensive plan provisions, and (2) that according to the decision in *City of Pendleton v. Kerns,* 294 Or 126, 653 P2d 992 (1982, road vacations as a category have significant impact on present and future land uses and thus are land use decisions.

ORS 197.015(10) reads as follows:

"(10)    'Land Use decision':

"(a)    Includes:

"(A)    A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i)    The goals;

"(ii)    A comprehensive plan provision;

"(iii)    A land use use regulation; or

---

[1] Polk County's Ordinance 136.010 deals with the Exclusive Farm Use Zone. It reads as follows:

"136.101 PURPOSE. The purpose and intent of the Exclusive Farm Use Zone is to provide areas for the continued practice of agriculture and permit the establishment of only those new uses which are compatible to agricultural activities.

"* * * * *

"Further, the Exclusive Farm Use Zone is intended to guarantee the preservation and maintenance of the areas so classified for farm use, free from conflicting non-farm uses and influences. The zone is subject to change only in those instances where there is substantial evidence that such land is no longer suitable for agriculture or that there has been a significant and substantial change in the land needs in the county which clearly demonstrates that such land is needed for uses other than agriculture. Such determination shall not be based upon the difference in the value of the land.

"* * * * *

"Except when approval of the Planning Commission has been obtained as provided in Section 136.030, all divisions of land in an Exclusive Farm Use Zone are prohibited."

"(iv)    A new land use regulation; or

■    The issue under the statutory argument is whether the decision involves the application of a comprehensive plan provision.[2] Because the Billingtons were the parties seeking LUBA review of the vacating order, the burden was on them to establish LUBA's jurisdiction, *i.e.,* that the Board decision was a "land use decision." *City of Pendleton v. Kerns, supra,* 294 Or at 134 n 7. The Polk County Ordinance cited by the Billingtons, zoning ordinance 110.010, (Establishment, Alterations, or Elimination of Future Right-of-Way Line) refers the reader to Polk County Ordinance Chapter 123, which deals only with procedural matters such as who must receive notice, content of the notice and procedures for hearings. The ordinances do not include standards or criteria to be used for decisions in such actions. LUBA concluded that the cited provisions of the ordinances were not "particularly helpful in deciding whether or not vacations of rights-of-way are land use decisions under the county's zoning structure." In fact, petitioners cite no county ordinance that contains requirements of policy findings or criteria for decision making that are made applicable to the road vacation decision. We find no county comprehensive plan provision or local zoning ordinance that contains or requires the employment of standards governing approval or denial of road vacation decisions. The decision merely touches some aspects of the comprehensive plan.

The county, in making its decision,[3] followed the procedure outlined by state statutes for vacation of county property, ORS 368.326 to 368.366.[4] The standards set forth by

---

[2] The Polk County Comprehensive Plan has been acknowledged by LCDC. Therefore the challenge can not be based on lack of compliance with statewide planning goals under ORS 197.015(10)(a)(A)(i). *Byrd v. Stringer,* 295 Or 311, 666 P2d 1332 (1983). Also, it is clear that the Board's decision is not an adoption or amendment of goals, land use regulations or comprehensive plan provisions.

[3] At oral arguments Polk County's counsel asserted that in the majority of cases involving road vacation, the road vacation procedures were used merely as a technical tool to clear up right-of-way problems and title problems where there had been a road relocation or a right-of-way that had never been developed or that had been abandoned.

[4] In 1981 the legislature rewrote the provisions relating to vacation of county property. The reason for the changes were housekeeping in nature because the prior law, with respect to procedures to be followed, was scattered throughout the state laws. In Exhibit A, appended to the House Transportation Committee Minutes of March

statute are: (1) "A county governing body shall not vacate public lands * * * if the vacation would deprive an owner of a recorded property right of access necessary for the exercise of the property right * * *," ORS 368.331; and (2) "When a vacation proceeding has been initiated * * * the county governing body shall direct the county road official to prepare and

10, 1981, entitled, The County Road Law: An explanation of revisions to state road law under HB 2051 — 1981 Regular Legislative Session, was the following synopsis:

"Introduction"

"Many of the present statutes governing county road administration are obsolete and unduly complicated. Furthermore different procedures for similar actions are scattered throughout the state laws, often resulting in confusion as to which procedure is appropriate. * * *.

"This bill concentrates on the statutes that relate to road activities of counties. It does not address road revenues or road districts.

"1. Where two or more procedures were prescribed in the past, one uniform procedure has been presented here.

"2. Where many individual statutes delineated specific actions that a county was authorized to take in the past, one authorization that is usually more general has been presented.

"3. Language has been used to more clearly establish that a county is not limited to many of the actions expressly enumerated in the state laws.

"4. A few new provisions have been drafted to cover problem areas that were not adequately covered before.

"In clarifying, consolidating and simplifying the broad authority the legislature has granted to counties on road matters, care has been taken to assure due process protection to the public and to discard unnecessary restrictions and requirements. The bill enacts 51 new sections of law and repeals 156. It amends another 25 sections of the present law."

The section analysis of Exhibit A that dealt directly with road vacation is as follows:

"**Sections 34 to 42** contain the vacation procedure to be used by a county to vacate a platted area or any public land, including a road. The existing statutes have been consolidated and simplified. The provisions are similar to vacation procedures for cities; they are an alternative to county ordinance or charter provision which may be used as an alternative authority. The current statutes to be replaced by these sections include ORS 271.010 to 271.070, vacation of public lands, plats, towns, etc. in unincorporated areas, including public roads that are not county roads; ORS 368.565 to 368.580 and 368.620, vacation of county roads; and ORS 360.410 to 369.480, on vacation of county line roads, all of which are provided for by these and other sections of this bill."

Nowhere in the legislative history is there any mention of tying the road vacation procedures to comprehensive plans. All references are to procedures to be used. In fact, if all the property owners along Clearview Orchards Road had signed a petition in favor of the road vacation, the county could have vacated the road, or a portion thereof, without even holding a public hearing. ORS 368.351 (vacation without hearing).

file with the county governing body a written report containing the following * * * (b) an assessment by the county road official of whether the vacation would be in the public interest;" ORS 368.346(1)(b). Once the report is received by the Board notice of a public hearing shall be provided. ORS 368.346(3). After the hearing, and "[a]fter considering matters presented * * * a county governing body shall determine whether vacation of the property is in the public interest and shall enter an order or resolution granting or denying the vacation of the property * * *." ORS 368.356(1).[5]

LUBA's majority opinion and petitioner hang their hat on the "in the public interest" peg. LUBA's majority opined:

"We recognize that road vacation proceedings are governed by the provisions of ORS Chapter 368. We note, however, that ORS 368.356 sets a general approval standard for road vacations—vacation must be in the 'public interest.' It is our view that under the language of the Polk County Comprehensive Plan, the measure of 'public interest' in the context of a road vacation is defined or refined in the comprehensive plan which can be read to refine the public interest standard."

LUBA then went on to discuss the road vacation

---

[5] The county surveyor is the county's road officer. His report reads in pertinent part as follows:

"Your County Surveyor submits his report as to the advisability of the proposed vacation of 20 feet on the Westerly side of Clearview Orchards right-of-way with the following findings:

"1. The Westerly 20 feet of the subject roadway is not now nor has it ever apparently been used for road purposes.

"2. The roadway leading to this section of public right-of-way is dedicated 20 feet wide.

"3. The area served by this right-of-way is EFU, so development pressure should never become a problem.

"4. Due to the extensive improvements (fences, gardens, trees, etc.) within this 20 foot strip and due also to the fact that it will only serve a few residences in a farm zone, returning to the tax rolls the unused and unneeded right-of-way would be in the public interest."

After the surveyor's report, the Board held two public hearings in which testimony was taken and evidence received. The only adjacent landowners opposing the vacation decision were petitioners. The Board ordered that the west 20 feet of Clearview Orchards be vacated and reserved an easement for power and water in the vacated strip.

decision with respect to the comprehensive plan's transportation element, public facilities and service element and the housing policy element. LUBA concluded (1) that the decision would have potential impact on the transportation system; (2) that the county was under an obligation to determine whether the decision would affect the public facilities and services; and (3) that the county needed to determine whether the decision would have any impact on the ability of the county's transportation system to serve the expected development in the area.

LUBA's reasoning goes against *City of Pendleton v. Kerns, supra,* and *Petersen v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977), which require a significant impact on present or future land use in the area before the decision could be classified as a land use decision. Here LUBA only requires a finding of "potential impact," "any impact" or "would affect" to trigger a conclusion that a decision was a land use decision. In *Kerns* we said:

> "We do not believe, however, that the legislature intended the myriad of prosaic administrative decisions regarding routine maintenance and minor public works and road projects be subject to LUBA and judicial review for compliance. Consequently, we reiterate the standard set forth in *Peterson [sic]* and hold that Ordinance No. 3141 is subject to LUBA review if, but only if, it can be said that the street improvement work will have a 'significant impact on present or future land uses' in the area."

294 Or at 133.

In *Kerns,* we upheld LUBA's determination that it had jurisdiction to review a city's decision to open a dedicated but unimproved street. The street was designated in the city's comprehensive plan as a minor neighborhood street but the city's decision would have opened the street as a major access route to two large undeveloped subdivisions. We concluded that the "Ordinance * * * effects a significant change in the land use status quo of the area and is not simply the de minimis street improvement project petitioners suggest." *Kerns,* 294 Or at 135. We acknowledged that "significant impact on present or future land uses is a nebulous standard" but gave an indication of the range of decisions, from fixing potholes to constructing a major arterial road, and where those decisions may fall in the scheme of land use decisions,

not specifically covered by the statutory definitions in ORS 197.015(10).

■ It is clear that LUBA does not have jurisdiction to consider decisions other than land use decisions. ORS 197.825. Under current law, if a local decision involves both a land use issue and other issues, a petitioner would have to file in both the circuit court and LUBA to have both matters adjudicated. The review of a land use decision is commenced by filing with LUBA a notice of intent to appeal. ORS 197.830(1). Once the notice of intent to appeal has been filed, the local government must send to LUBA a copy of the entire record of the proceeding under review. ORS 197.830(8). Also, petitioner must file with LUBA a petition for review and a supporting brief. ORS 197.830(9). Generally, LUBA's review is limited to the record. ORS 197.830(11). Therefore, if a person files a notice of intent to appeal, the stage is set and the players given roles. Once the petitioner and the local government have submitted the required materials to LUBA, LUBA must evaluate the record to determine as a threshold issue whether the decision sufficiently hinges on application of land use norms to give LUBA jurisdiction. The evaluation of the threshold element needed for jurisdiction may overlap petitioner's claim on the merits; the label given by LUBA to a decision to dismiss, i.e., dismissed for lack of jurisdiction or dismissed because the decisions does not have significant impact on present or future land uses, is not important. What is important is that the proper test be used in arriving at the decision. In this case, the test that should have been used is the significant impact test rather than "would have potential impact," "would affect" or "would have any impact" on current or future land uses.

In conclusion, there are two tests to determine whether a decision is a land use decision: (1) The statutory test defined by ORS 197.015(10), and (2) The significant impact test as referred to *Peterson* and *Kerns* for decisions not expressly covered in a land use norm. The county's comprehensive plan is silent as to its function in the context of road vacations. Neither the plan nor the ordinances have provisions to be employed as governing standards in the decision making process in road vacation decisions; there are only procedural requirements. ORS Chapter 368 does not call for direct application of the comprehensive plan. The absence of

any clear legislative requirement that plan provisions be applied as standards in this road vacation proceeding means there is no statutory basis under ORS 197.015(10)(a)(A)(ii), application of a comprehensive plan provision.

■ In the absence of a direct statutory mandate to apply a comprehensive plan provision or ordinance, the next step is to determine whether the decision will have significant impact on present or future land uses. If the decision will have significant impact, it is a land use decision and LUBA has jurisdiction over the land use matter.

Remanded to LUBA to apply the appropriate test.