No. 23          January 10, 2024          191

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Jordan WINTERS,
Rachel Winters, Justin Greene, and
Nicole Ralston,
*Petitioners,*

*v.*

TILLAMOOK COUNTY,
*Respondent*

Land Use Board of Appeals
2023027

Carl COFFMAN,
*Petitioner,*

*v.*

TILLAMOOK COUNTY,
*Respondent.*

Land Use Board of Appeals
2023028

Paul KOEPKE,
Carrie Koepke, and
Cascadia Investment Properties,
*Petitioners,*

*v.*

TILLAMOOK COUNTY,
*Respondent.*

Land Use Board of Appeals
2023029; A182569

Argued December 13, 2023.

Heather A. Brann argued the cause for petitioners. On the brief were David Petersen, Sasha A. Petrova, Danny Newman, and Tonkon Torp LLP.

Daniel Kearns argued the cause for respondent. Also on the brief was Reeve Kearns PC.

Before Joyce, Presiding Judge, Lagesen, Chief Judge, and Jacquot, Judge.

LAGESEN, C. J.

Reversed and remanded.

## LAGESEN, C. J.

Petitioners seek judicial review of a final order of the Land Use Board of Appeals (LUBA) that granted Tillamook County's motion to dismiss for lack of jurisdiction. LUBA did so based on its determination that petitioners had not met their burden of demonstrating that the decisions at issue were "final" decisions—a prerequisite to LUBA's exercise of jurisdiction. ORS 197.825 (conferring jurisdiction on LUBA to review "any land use decision"); ORS 197.015(10)(a)(A) (defining "land use decision" to be a "final decision or determination" of a specified nature). We review to determine whether LUBA's order is "unlawful in substance or procedure." ORS 197.850(9)(a). In particular, whether a particular decision is "final" within the meaning of ORS 197.015.10(a)(A) presents a question of law, such that we review for legal error. Applying that standard, we reverse and remand.

The challenged decisions took the form of emails from county staff. Each petitioner submitted an application to the county for a new short-term rental (STR) permit. County staff declined to accept and process petitioners' applications and, instead, returned the applications to them. As county staff explained to petitioners in the emails, that course of action was required by Order 22-033, an order of the county board of commissioners. That order prohibited the county's Department of Community Development from accepting and processing applications for new STR permits, with some exceptions, from July 1, 2022, to June 30, 2023, the time window in which petitioners submitted their applications.

Petitioners sought LUBA's review of the decisions to return their applications. The county moved to dismiss, contending that a decision under Order 22-033 not to accept and process an STR permit was not a reviewable "land use decision" within the meaning of ORS 197.015(10)(a)(A). On that point, the parties' arguments centered on whether the decisions at issue bore the substantive hallmarks of a "land use decision." *See* ORS 197.015(10)(a)(A). At one point, the county also noted that "it appears that none of these return e-mail communications is 'final,'" but it did not identify any additional steps that needed to be taken to memorialize or otherwise finalize

the decision not to accept petitioners' applications for processing. Responding, albeit obliquely, to that observation, petitioners asserted that "if [the county] were correct, no petitioner would ever have standing to challenge an invalid moratorium, because the decision would never be 'final' but merely a 'pause' and therefore not a land use decision."

As noted, LUBA determined that petitioners had not demonstrated that decisions not to accept and process their applications were "final" within the meaning of ORS 197.015(10)(a)(A) and dismissed for that reason. As a result, it did not reach the issue of whether the county's decisions under Order 22-033 not to accept and process petitioners' applications otherwise qualified as land use decisions under ORS 197.015(10)(a)(A). Accordingly, we consider only LUBA's determination that the challenged decisions were not "final" decisions, and do not otherwise address the question whether the decisions, if final, are land use decisions subject to LUBA's review.[1]

In this context, a decision is final if it is not preliminary or merely advisory. *Weeks v. City of Tillamook*, 113 Or App 285, 289, 832 P2d 1246 (1992) (concluding that city council's determination, memorialized in council minutes, that a conditional use permit was valid was a final decision subject to LUBA's review). As we characterized it in *Weeks*, a final decision is one that "give[s] a clear and decisive answer to a clear question." Relatedly, as petitioners point out, LUBA's own rule, OAR 661-010-0010, specifies that "[A] decision becomes final when it is reduced to writing and bears the necessary signatures of the decision maker(s)," unless a local rule or ordinance provides for a different finality date. OAR 661-010-0010(3).

Here, the decisions for which petitioners seek LUBA review satisfy those standards for finality. The emails notifying petitioners that the county would not accept their applications were in writing and contained the signature blocks

---

[1] The county argues that petitioners failed to preserve their arguments that the challenged decisions were final ones. Having reviewed the filings before LUBA, we disagree. Petitioners took the position that that application of Order 22-033 to bar the acceptance and processing of their applications was sufficiently conclusive so as to permit them to challenge the county's decisions to decline to process their applications.

of the staff members making the decisions, and the county does not suggest that those written communications fail to satisfy OAR 661-010-0010(3). As for whether the decisions were preliminary or advisory, the emails give a "clear and decisive answer to a clear question." *Weeks*, 113 Or App 289. Specifically, the emails answer the question whether, under Order 20-033, the county will accept and process petitioners' applications for new STR permits. There is no indication that the county's answer was tentative or advisory. And the county has never suggested, either before LUBA or before us, that petitioners would have been entitled to further review of staff decisions implementing Order 22-033 at the local level such that staff emails were not the final local word on the matter. On the contrary, the emails are unequivocal that the county would not accept and process petitioners' applications so long as Order 20-033 prohibited county staff from doing so. That petitioners might be able to resubmit their applications later does not alter the fact that the county made a conclusive decision that it would not accept and process petitioners' applications while Order 20-033 barred the acceptance and process of such applications.[2]

LUBA thus erred in determining that petitioners had not demonstrated that the challenged decisions were final decisions, and its order is therefore unlawful in substance. ORS 197.850(9)(a). Accordingly, we reverse and remand for LUBA to determine, in the first instance, whether the county's decisions not to accept and process petitioners' applications in view of Order 22-033 otherwise qualify as land use decisions subject to LUBA's review.

Reversed and remanded.

---

[2] The county's decision not to accept and process petitioners' applications at the time they were filed is potentially significant because during the time in which Order 22-033 precluded county staff from accepting and processing new STR permit applications, the county changed the standards for issuing new STR permits. In petitioners' view, the county's refusal to accept their applications may mean that they are deprived of the benefit of the standards in place at the time they originally submitted their applications. In other words, the fact that the county is now accepting and processing applications for STR permits does not mean that the county's decision not to accept the application earlier is inconsequential for petitioners, in view of the change in standards for issuing STR permits.