No. 416 June 26, 2024 315

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Jennifer AKIYAMA;
David Allen; Kimberly D.M. Bergstrom;
Eric C.M. Bergstrom; Peter Birch; Kathy Hamel;
Mark Buxton; Robin Buxton; Nate Castillo;
Minerva Castillo; Doug Coates; Carl T. Coffman;
Paul S. Cosgrove; Emily Draper;
Christine Eisenschmidt; Robert Govender-Towle;
Justin Greene; Nicole Ralston; Colin Grey; Karen Jackson;
Brian Johnson; The Smith Johnson-Leupp LLC;
Justin Jones, Trustee; Carrie Koepke;
Cascadia Investment Properties, Inc.; Lana Kowalski;
Mike Kowalski; Ron Lockwood; Martha Lockwood;
Richard Lofton; Jeanine Lofton Hendrix; Andy Long;
Sandra Y. Manning, Trustee; Bonnie McDowell; Phil Zapf;
John P. McLoughlin; Katie McLoughlin;
Desiree McMenamin; Dustin McMenamin;
Maria M. Meyer; John Meyer; Skip Patten;
Brian Patterson; Barbara Patterson; Stephen Piucci;
Melissa Powers; Anthony Power; Holly Power;
Susan Schomburg; Michael Smith; Janell Weeks;
Heather L. Weigler; Jake Weigler; Kenneth G. Willett;
Kevin Wingert; Brenda Huffstuttler; Jordan Winters;
and Rachel Winters,
*Petitioners,*

*v.*

TILLAMOOK COUNTY,
Tom Prehoditch, Jerry Keene, Vickie Prehoditch, Jacki
Hinton, David Boone, Barbara Triplett, Amy Bell, Gary
Billingsley, Michael Woodin, Dave Benneth, Carol Hoke,
Laurie Kovack, Bruce Bishop, Mark L. Roberts,
Joanie Blum, Candice Miller, and Gregory Miller,
*Respondents.*

Land Use Board of Appeals
2023063;
A183660

Argued and submitted April 24, 2024.

Heather A. Brann argued the cause for petitioners. Also on the brief was Heather A. Brann PC.

Daniel Kearns argued the cause for respondents. Also on the brief was Reeve Kearns PC.

Before Joyce, Presiding Judge, Lagesen, Chief Judge, and Jacquot, Judge.

LAGESEN, C. J.

Affirmed.

**LAGESEN, C. J.**

Petitioners seek judicial review of a final order of the Land Use Board of Appeals (LUBA). In that order, LUBA granted Tillamook County's motion to dismiss for lack of jurisdiction petitioners' challenge to county Ordinance 84-2, which regulates the use of private homes as short-term rentals. LUBA concluded that the ordinance was not a land use regulation and, consequently, was not within the statutory scope of LUBA's review. LUBA also concluded that it did not have jurisdiction to review the ordinance under the common-law "significant impact" test. Petitioners assign error to each of LUBA's determinations with respect to its jurisdiction. We review to determine whether LUBA's order is unlawful in substance or procedure, ORS 197.850(9)(a), and affirm.

## I. LUBA'S JURISDICTION

At issue in this case is the scope of LUBA's jurisdiction to review decisions of local governments. To provide context for the parties' dispute and our analysis, we supply an overview of the law governing LUBA's jurisdiction.

LUBA's jurisdiction to review local government actions derives from both statute and, perhaps surprisingly for a legislatively created body, the common law. Under both sources of law, the party seeking to invoke LUBA's review has the burden of proving that their challenge to government action is within LUBA's jurisdiction. *Billington v. Polk County*, 299 Or 471, 475, 703 P2d 232 (1985).

A.  *Statutory Jurisdiction*

By statute, LUBA has "exclusive jurisdiction to review any 'land use decision.'" ORS 197.825(1). A "land use decision" includes a decision by a local government "that concerns the adoption, amendment, or application of the [statewide planning] goals, a provision of the county's comprehensive plan, a land use regulation, or a new land use regulation." ORS 197.015(10)(a)(A). A "land use regulation" includes a local government's "zoning ordinance, land division ordinance * * * or similar general ordinance establishing standards for implementing a comprehensive plan." ORS

197.015(11). Even when a local government does not characterize its actions as be land use regulations, LUBA long has held that its jurisdiction extends to actions that have a "clear connection" to the county's comprehensive plan. *Rest-Haven Memorial Park v. City of Eugene*, 30 Or LUBA 282, 288, *aff'd*, 175 Or App 419, 28 P3d 1229 (2001).[1] Consistent with the text of ORS 197.015(11), to meet the clear connection test, LUBA has required challengers to show that the government action, however denominated, establishes standards to implement the government's comprehensive plan. *Ramsey v. City of Portland*, 30 Or LUBA 212, 217 (1995); *Buys v. City of Portland*, 69 Or LUBA 486, 491 (2014).

B.   *Common Law Jurisdiction*

        Under the common law, LUBA has jurisdiction to review local governmental actions that have a significant impact on land use, even if the action does not fall within the statutory definition of a land use decision. *Marks v. LCDC*, 327 Or App 708, 727-28, 536 P3d 995 (2023); *Billington*, 299 Or at 478-79. We will elaborate on the test later but note here that it focuses on expected impacts on land use that are "likely" to occur and are not speculative. *Marks*, 327 Or App at 728. The test, we have explained, is "deceptively easy to articulate" for a standard that, in practice, remains opaque. *Marks*, 327 Or App 727-28.

## II.   FACTUAL BACKGROUND

        Having outlined the sources and scope of LUBA's jurisdiction, we turn to the facts of this case. Petitioners seek LUBA's review of Tillamook County's Ordinance 84-2, which regulates short-term rentals of residential property. In their view, LUBA has both statutory and common law jurisdiction to review the ordinance. Understanding petitioners' arguments requires understanding of both the regulatory history of short-term rentals in the county, as well as an understanding of our previous decisions addressing LUBA's jurisdiction over the county's short-term rental regulations.

---

[1] Although LUBA's opinions are not binding on this court, they are relevant for persuasive value. *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 251-52, 264 P3d 1265 (2011).

In 2017, Tillamook County adopted Ordinance 84 to regulate the licensing[2] and operation of private dwellings used as short-term rental units in unincorporated areas of the county.[3] Ordinance 84 (2017) required owners of private dwellings intending to use them as short-term rentals to acquire and pay for an operation license before using the dwelling as a short-term rental. The 2017 ordinance also provided that a license could be revoked for noncompliance with the ordinance's provisions; a licensee also could be subject to a tax penalty.[4]

In 2022, the Tillamook County board of commissioners passed Board Order 22-03. The order temporarily suspended the county's acceptance, processing, and issuance of new applications for short-term rental licenses. A number of parties sought LUBA's review of the order. They argued that LUBA had jurisdiction to review the order on either or both of two bases. First, they argued that it was subject to LUBA's review as a "development moratorium" because it paused the issuance of new short-term rental licenses. Second, they argued that it was a "land use regulation" because, in petitioners' view, it amended an existing land use regulation. Specifically, petitioners contended that Ordinance 84 (2017) was itself a land use regulation, such that any amendment to the ordinance also qualified as a land use regulation. *Winters v. Tillamook County*, 330 Or App 188, 189-90, 189 n 1 (2024) (nonprecedential memorandum opinion) (*Winters I*).

LUBA rejected both arguments. It concluded that the order was not a "development moratorium" because it did not involve either "construction or land development," as defined by ORS 197.250(1), or "the subdivision or partitioning of, or construction on, any land" as defined in ORS

---

[2] Ordinance 84 (2017) used the term "permits" to refer to the county's authorizing of an individual to use their dwelling as a short-term rental. Ordinance 84-2 refers to the same authorization as a "license." The change in terminology does not have any substantive impact on the analysis for LUBA's jurisdiction, and we use "licensing" in this opinion.

[3] Before 2017, the county regulated short-term rental licensing through Ordinance 69 (2009).

[4] The county amended Ordinance 84 in 2019. Those amendments have no bearing on our analysis of LUBA's final order.

197.524(1); the order did not prevent the petitioners from constructing the dwellings they hoped to use as short-term rentals. *Id.* at 188. As to whether the order was a "land use regulation" by virtue of the fact that it amended Ordinance 84, LUBA determined that Ordinance 84 itself was not a land use regulation because it did not adopt, amend, or apply a statewide planning goal, a provision of the Tillamook County Comprehensive Plan (TCCP), or other land use regulations. *Id.* at 190. On judicial review, we affirmed.[5]

In 2023, the county adopted a second amended version of the ordinance, Ordinance 84-2, at issue in this case. Ordinance 84-2 maintained the licensing scheme for short-term rentals and established new operational requirements for them. For example, the ordinance establishes requirements for solid waste collection—such as requiring property owners to obtain weekly solid waste collection services, to provide waste bins on site, and to have an adequate septic system; requires each short-term rental to pass a fire safety inspection which includes checking for the presence of fire extinguishers and smoke detectors, rails on certain stairways, ensuring that fireplaces are properly ventilated, and requiring emergency escapes in the property; requires that all structural improvements to short-term rentals be permitted; and provides procedures for owners to respond to complaints from neighbors. The ordinance requires property owners to demonstrate compliance with these—and all other—operational requirements. Noncompliance may result in license revocation, nonrenewal, and penalties.

Ordinance 84-2 also made a few other notable changes that, in petitioners' view, demonstrate that the

---

[5] In a related challenge, the same residents from *Winters I* sought LUBA's review of county officials' email denying the residents' permit applications in accordance with Board Order 22-033. *Winters v. Tillamook County*, 330 Or App 191 (2024) (nonprecedential memorandum disposition) (*Winters II*). LUBA dismissed the challenge because it concluded that the emails denying the applications were not "final orders." We reversed, concluding that the emails were "final" because they provided a "clear and decisive" answer to the residents' permit application and were signed by county officials. *Id.* at 194-95. We remanded for LUBA to determine, in the first instance, whether the county's denial of applications otherwise qualified as "land use decisions" subject to LUBA's review. *Id.* at 195.

ordinance is subject to LUBA's review. For example, the ordinance limits the number of licenses to one per licensee,[6] establishes geographical subareas within the county and limits the number of licenses that may be issued for each subarea, establishes a density limitation on the issuance of short-term rental licenses, and establishes a minimum rental rate requirement to qualify for license renewal.

As noted, petitioners sought LUBA's review of Ordinance 84-2, alleging that LUBA had both statutory and common law jurisdiction. LUBA dismissed and petitioners seek judicial review of the order of dismissal.

### III.   STANDARD OF REVIEW

We review LUBA's final order to determine whether it is "unlawful in substance or procedure." ORS 197.850(9)(a). A LUBA order is "unlawful in substance" if it "represents a mistaken interpretation of applicable law," meaning that we review for legal error. *Kine v. Deschutes County*, 313 Or App 370, 372, 496 P3d 1136, *rev den*, 369 Or 69 (2021). Petitioners contend that LUBA's final order dismissing their challenge for lack of jurisdiction is unlawful in substance because, according to petitioners, LUBA made mistakes of law in concluding that Ordinance 84-2 is not a land use regulation subject to LUBA's review. Petitioners also argue that LUBA erred in concluding that it lacked common law jurisdiction to review the ordinance.

### IV.   ANALYSIS

#### A.   *Statutory Jurisdiction*

We start with petitioners' contention that LUBA had statutory jurisdiction. Petitioners argue that Ordinance 84-2 is a "land use regulation," within the meaning of ORS 197.015(1), presenting three different theories as to why: (1) the ordinance amended a prior land use regulation; (2) the ordinance regulates nonconforming land uses; and (3) the ordinance qualifies as a zoning ordinance. We address each of those theories in turn.

---

[6] This limitation applies only to those applications submitted after the effective date of Ordinance 84-2.

1.  *Petitioners' theory that ordinance 84 (2017) is a land use regulation.*

Petitioner's first argument rests on the premise that Ordinance 84 (2017) is itself a land use regulation, meaning that each amended version of the ordinance, including Ordinance 84-2, is also a land use regulation. They assert that Ordinance 84-2 and its prior versions have a clear connection to the TCCP because the county's Land Use Ordinance (LUO) provides that "[a]ny application or any decisions based upon *** local regulations administered by the Director [of the Department of Community Development] *** shall constitute an application or a decision pursuant to" the LUO. [7] LUO § 1.030(2). According to petitioners, because Ordinance 84-2 delegates to the Director of Community Development the power to issue, administer, and revoke short-term rental licenses, any decision by the director related to those licenses is a "land use regulation."

LUBA rejected this argument based on its conclusion that Ordinance 84-2 does not establish standards to implement the TCCP, or otherwise concern the adoption, amendment, or application of a statewide planning goal, land use regulation, or zoning ordinance. In so doing, LUBA committed no legal error. As noted, we recently affirmed LUBA on the same point in *Winters I*.[8] 330 Or App at 189-90. The petitioners in *Winters I* made the exact argument that petitioners in this case do: that Ordinance 84 (2017) is a "land use regulation" because the Director of the Department of Community Development has authority to issue, deny, and revoke any short-term rental licenses. Relying on LUBA's decision in *Ramsey*, which we found persuasive, *see Friends of Yamhill County*, 351 Or at 251-52, we upheld LUBA's

---

[7] The LUO implements the TCCP. *See* ORS 197.175(2)(b) (requiring counties to "[e]nact land use regulations to implement their comprehensive plans).

[8] The Oregon Rules of Appellate Procedure state that "nonprecedential memorandum opinions are not precedent and are not binding authority except as relevant under the law of the case doctrine or the rules of claim preclusion or issue preclusion." ORAP 10.30(1)(c). The rules provide that nonprecedential decisions "may be cited if no precedent addresses the issue before the court." ORAP 13.30(d). Consistent with that limited allowance, we cite to a few nonprecedential memorandum opinions previously decided by this court that directly address the issues on appeal because we are not aware of, and the parties do not point us to, any precedential decisions that address the issues.

dismissal of the petitioners' challenge because the petitioners did not show the requisite clear connection between Ordinance 84 (2017) and Tillamook County's Comprehensive Plan. *Id.* at 190; ORS 197.015(11) (defining "land use regulation" as "any local government zoning ordinances, land division ordinance adopted under ORS 92.044 or ORS 92.046 or similar ordinance establishing standards for implementing a comprehensive plan).

As we observed in *Winters I*, contrary to the petitioners' argument, the mere fact that the ordinances gave oversight authority to the Director of the Department of Community Development—a person whose decisions are considered land use regulations under the LUO—over short-term rental licenses in the county does not show that the ordinance itself contained standards that implement the county's comprehensive plan. *Winters I*, 330 Or App at 190; *see also Ramsey*, 30 Or LUBA at 213, 217-18 (no clear connection between city ordinance that set tree-cutting permitting procedures and assigned task of reviewing permit applications to Urban Forestry Commission and city comprehensive plan because the ordinance did not establish standards to implement the city's comprehensive plan); *Billington*, 299 Or at 475 (1985) (county action that "merely touche[d] some aspects of the comprehensive plan" was not a land use decision).

Accordingly, although *Winters I* is not precedential and we are free to depart from it, we remain persuaded that Ordinance 84 (2017) does not implement the comprehensive plan and, consequently, is not a land use regulation. As a result, Ordinance 84-2 is not itself a land use regulation by virtue of the fact that it amends Ordinance 84 (2017).[9]

---

[9] Petitioners also contend in passing that Ordinance 84-2 implements statewide planning Goal 10, which directs local governments to inventory buildable lands for needed housing units and is, for that reason, clearly connected to the county's comprehensive plan. Specifically, petitioners argue that Goal 10, as implemented in the TCCP, "is an acknowledgement of the tradition and expanse of second homes in Tillamook County and requires the county to plan for both 'permanent' and 'seasonal' populations," including short-term rentals. Petitioners' argument to LUBA was different: that Ordinance 84-2 is meant to "address local affordable and workplace housing needs and increase availability of housing," which, they asserted, implements Goal 10's housing policy by increasing the availability of affordable housing through limiting the number of

2.  *Petitioners' nonconforming use theory*

Petitioners' next argument, as we understand it, is that the ordinance regulates nonconforming uses of land, making it a land use regulation for purposes of LUBA's statutory jurisdiction. Petitioners cite sections .040(C) and .080(G) of the Ordinance in support of their argument.

Section .040(C) provides:

"No Nonconforming Status Conferred. The fact that an owner of property or other entity may hold a license on the date of adoption of this Ordinance does not confer a property right, land use permit or nonconforming use status under ORS 215.130 to continue operation of a short-term rental. Operation, advertisement, or offering a dwelling unit for short-term rental use, in all cases, requires a valid license."

Section .080(G) provides:

"Zoning compliance. The property shall be in compliance with all applicable County zoning requirements and any development permits related to the subject property. If the property owner claims any sort of non-conforming use status for any aspect of the property or structures thereon, the property owner shall obtain a nonconforming use verification for those aspects through an appropriate land use decision making process. In no event shall this Ordinance be construed as a land use or development regulation, nor does prior operation of a short-term rental give rise to a nonconforming use right under the County's land use ordinance."

Petitioners contend that those provisions of Ordinance 84-2 legislatively adjudicate the land use status of their dwellings. Petitioners' argument, as presented to LUBA, and as we understand it, is that those provisions "adjudicate ineligibility for nonconforming use status protections." In support of that argument, petitioners rely on *Briggs v. Lincoln County*, ___ Or LUBA ___ (Order, LUBA No 2021-118/2022-030, May 2022) (*Briggs Ballot Measure*), in which LUBA concluded that a Lincoln County

---

short-term rentals available in the county. We therefore reject petitioners' Goal 10 argument as unpreserved.

ballot measure regulating short-term rentals was a land use regulation.

The county responds that LUBA correctly rejected that argument when it accepted the county's argument that those provisions are distinguishable from the regulation at issue in *Briggs Ballot Measure*, and that those provisions reflect the county's intention that short-term rental licenses are business licenses that do not, themselves, give rise to land-use rights. Interpreted that way, the provisions, contrary to petitioners' arguments, did not "adjudicate ineligibility for nonconforming use status protections." Rather, as the county asserted, the provisions stand for the proposition that licensees seeking a nonconforming use status must go through the ordinary nonconforming use status process, and that the licensing ordinance is not relevant to that process.

We understand LUBA to have agreed with the county's argument that *Briggs Ballot Measure* involved a distinguishable regulation and that the provisions at issue, correctly interpreted, did not affect the land use process. As LUBA explained, *Briggs Ballot Measure* involved a different type of regulatory approach to short-term rentals and, given that difference in approach, does not demonstrate that Tillamook County's ordinance is a land use regulation:

> "*Briggs Ballot Measure* was an appeal of a ballot measure that adopted amendments to the county's short-term rental ordinance that deemed 'existing licensed STR uses' in certain zones to be *nonconforming uses that were not transferable*. That ran afoul of ORS 215.130(5). Ordinance 84-2 does not do that; it recites that possession of a short-term rental license does not confer nonconforming use status, and that a holder of a license who claims nonconforming use status must establish that status through the nonconforming use verification procedure in the LUO. It does not legislatively predetermine the outcome of a nonconforming use verification application pursuant to the LUO."

Petitioners have not shown that LUBA committed legal error in that analysis. On their face, the provisions of Ordinance 84-2 signal Tillamook County's intent to clarify that its business licensing scheme is not intended to bear

on the land-use process, and that the ordinary process for establishing nonconforming uses is not displaced by the short-term rental regulations. To be sure, the sentence stating "nor does prior operation of a short-term rental give rise to a nonconforming use right under the county's land use ordinance," when divorced from its context, could be understood, as petitioners argue, to provide a substantive rule of decision on an application for a nonconforming use status application.

Context, however, points toward the conclusion that the cited provisions simply operate as a clarification that the short-term-rental licensing ordinance does not directly affect land use. That sentence is embedded within a sentence setting forth a rule of construction for the ordinance: "[i]n no event shall this Ordinance be construed as a land use or development regulation," indicating the point of the provision is to make clear that the ordinance itself is not intended to affect land-use rights. The provision in Section .040(C) stating that possession of a "license" does not give rise to property, land use, or nonconforming use rights, likewise signals that the objective of the provision is to make clear that the licensing scheme is not a land-use scheme. For that reason, LUBA correctly rejected petitioners' argument that the ordinance adjudicates nonconforming use verification applications and falls within its jurisdiction for that reason.

In summary, regardless of a local government's regulatory approach to short-term rentals, LUBA will only have jurisdiction to review a challenge to a short-term rental regulation if the regulation establishes standards to implement the county's comprehensive plan or otherwise qualifies as a land use decision under the statutory definition. *Ramsey*, 30 Or LUBA at 213, 217-18; *Winters I*, 330 Or App at 189-90. Here, given the plain terms of the ordinance, LUBA permissibly concluded that Ordinance 84-2 does not regulate land use for purposes of LUBA's jurisdiction. *See Morgan v. Jackson County*, 290 Or App 111, 117, 414 P3d 9217, *rev den*, 362 Or 860 (2018) (the phrase "lawful use" in ORS 215.130(5) refers to land use laws, not regulatory licenses that require businesses to obtain certain licenses to

operate; that is, business license requirements are not land use regulations).[10]

### 3. *Petitioners' zoning ordinance theory*

Petitioners' final theory as to why Ordinance 84-2 falls within LUBA's statutory jurisdiction is that it is a zoning ordinance and is therefore, a land use regulation. ORS 197.015(11) (defining "land use regulation" as including "zoning ordinance[s]"). Their argument rests on the notion that ORS 215.503(9) defines what it means to be a zoning ordinance for purposes of ORS 197.015(11).

ORS 215.503(9) provides:

"For purposes of this section, property is rezoned when the governing body of the county:

"(a)    Changes the base zoning classification of the property; or

"(b)    Adopts or amends an ordinance in a manner that limits or prohibits land uses previously allowed in the affected zone."

Petitioners assert that Ordinance 84-2 "limits or prohibits land uses previously allowed" because it limits the use of private homes as short-term rentals where such "use" was previously allowed.

LUBA has concluded previously that ORS 215.503(9) does not bear on whether a county ordinance is a zoning ordinance for purposes of ORS 197.015(11). *Briggs v. Lincoln County*, ___ Or LUBA ___ (LUBA No 2021-113, Feb 10, 2022) (*Briggs Ordinance*).[11] We upheld that determination in *Dean*

---

[10]  Our conclusion that the provisions at issue reflect the county's treatment of short-term rentals as a business licensing matter, rather than a land use matter, does not speak to the question of whether the ordinance has any effect on the existence of property rights. We do not address the question here. As we observe in our common law jurisdiction analysis below, the question whether Ordinance 84-2 infringes on protected property interests is distinct from the question whether Ordinance 84-2 is the type of local government decision that LUBA has jurisdiction to review. *See* ___ Or App at ___ n 13, (slip op at 17 n 13).

[11]  After LUBA determined in *Briggs Ordinance* that it did not have jurisdiction to review the challenge to the ordinance, it transferred the case to circuit court upon the petitioners' request. *Briggs Ordinance*, ___ Or LUBA at ___ (slip op at 14). The challengers to the ordinance argued to the circuit court that the ordinance was a land use regulation and, alternatively, that the ordinance was unconstitutionally vague. The court declined to address the land use question because that was a determination left to the province of LUBA. *Briggs et al. v.*

*v. Lincoln County*, 331 Or App 349 (2024) (nonprecedential memorandum opinion). Although *Dean*, like *Winters I*, is a nonprecedential decision that we are free to depart from, we remain persuaded that LUBA correctly concluded that ORS 215.503(9) is irrelevant to the determination whether a regulation is a zoning ordinance. Rather, as the text and history of ORS 215.503 indicate, the provision was enacted to ensure that property owners received notice of land-use decisions affecting their property, and was not intended to change what does, or does not, constitute a land-use decision.

ORS 215.503 was approved by voters as Ballot Measure 56 (1998). Under the plain terms of the statute, property is rezoned for purposes of the notice requirement only when a county acts in two ways: it changes the zoning category of a property, or it limits or prohibits "land uses" previously allowed. ORS 215.503(9). Although the statute does not define "land uses," there is no indication in the text that the statute was intended to alter existing law on what constitutes a land use decision and what does not. That is, "land uses previously allowed" in ORS 215.305(9) refers to uses of property as allowed by the county's land use laws and zoning categories.

The information presented to voters about the effect of approving Ballot Measure 56 supports that conclusion. The Voters' Pamphlet informed voters that the purpose of Measure 56 was to "require cities and counties to provide individual written notice to every landowner when the city or county proposes a new or amended zoning ordinance," when local governments "propose changes to a city or county comprehensive land use plan that will require changes to existing zoning designations," and provided a time period for local governments to provide such notice. Official Voters' Pamphlet, General Election, Nov 3, 1998, 14. Thus, contrary to petitioners' suggestion that Measure 56 was intended to define (or redefine) what it means for property to be rezoned, the Voters' Pamphlet indicates that the purpose of the

---

*Lincoln County*, Case No. 22CV38244. The circuit court went on to address the constitutional arguments properly within its jurisdiction and held that certain sections of the ordinance were unconstitutionally vague and severed those from the rest of the ordinance. *Id*. The parties to the circuit case have appealed the court's judgment to this court. *Briggs v. Lincoln County*, A183535.

measure was to ensure that property owners received notice of existing types of land-use changes.[12]

For example, Measure 56 was titled "Expands notice to landowners regarding changes to land use laws." Voters' Pamphlet at 12. The explanatory statement confirms that notice is required "for proposed changes to a city or county comprehensive land use plan that will require changes to existing zoning designations." *Id*. at 14. The yes-vote result statement stated that the measure would "require governments to mail notice to landowners regarding changes to land use laws." *Id*. at 12. The summary informed voters that the notice requirement applied with regards to "changes to state, local, or metropolitan service district land use laws and regulations." *Id*. Further, arguments in support of Measure 56 focused on changes to a county's comprehensive plan or land use and zoning changes that affect the allowable uses of the underlying land of the property. *See id*. at 15 (Legislative Argument in Support), 17 (argument in support by Oregon State Grange), and 19 (argument in support by Bill Hackett).

Accordingly, in view of that text and history, and as we concluded in *Dean*, ORS 215.503(9) does not establish that Ordinance 84-2 is a zoning ordinance subject to LUBA's jurisdiction.

B.  *Common Law Jurisdiction*

Petitioners alternatively argue that if LUBA lacks statutory jurisdiction, then it has common law jurisdiction because, in petitioners' view, Ordinance 84-2 has a "significant impact on the use of land." Citing the ordinance's provisions limiting the number of short-term rental permits in the geographic subareas and per licensee, petitioners argue that the ordinance will have a significant impact on land use in the area because it will limit property owners' ability to use homes as short-term rentals. Relatedly, they argue

---

[12] Commentators also have recognized that the statute is a notice provision. Edward Sullivan and Caleb J. N. Huegel, *Oregon's Resource Protection Conundrum*, 58 Willamette Law Rev 1, 74 n 311 (2021) (stating that ORS 215.503 is a statute requiring local governments to provide notice to property owners about actions that may directly or indirectly change the underlying zoning of land or limit or prohibit uses that were previously allowed on land).

that the license restrictions in Ordinance 84-2 infringe on their constitutionally protected property rights.[13]

We recently canvassed the law on the significant impact test in *Marks*, 327 Or App 708, for the purpose of assessing the common law jurisdiction of the Land Conservation and Development Commission (LCDC).[14] There, we explained that a local government's decision had "significant impacts on present or future land use" and, therefore, satisfied the requirements of the "significant impacts test" when the decision changed the land use status quo of the area at issue, such as when a city authorized the improvement of an already dedicated but unimproved city street. *Id*. at 728 (citing *City of Pendleton v. Kerns*, 294 Or 126, 653 P2d 992 (1982)). That authorization created a significant enough change in the traffic pattern of the area that it changed the status quo of the previously unimproved street. *Id*. We observed that, in another case, we concluded that a county's grant of incorporation for a new city within the county that fixed boundaries for the new city and set a date for a special election on the incorporation of the city had significant impacts on present or future land use. *Id*. at 729 (citing *1000 Friends of Ore. v. Wasco Co. Court*, 62 Or App 75, 77, 659 P2d 1001, *rev den*, 295 Or 259 (1983)). We explained that was so because the county's grant of incorporation changed the use of the underlying land that the new city would be built on from rural to urban land use. *Id*. (internal quotation marks omitted). We also observed that if the voters defeated incorporation, "no land will be available for urban use," and although that would "maintain the status quo, it would nevertheless have significant impact on

---

[13] At this point, in view of petitioners' assertion of a constitutional claim, it is worth remembering that the precise issue before us is whether LUBA had common law jurisdiction to consider petitioners' claims. A conclusion that an ordinance's effect on land use is not the type that gives rise to LUBA's jurisdiction is not the same as a conclusion that the ordinance's effect on property rights is constitutional. It simply means that LUBA is not the forum for resolving the constitutional claim. In other words, to the extent petitioners suggest that Ordinance 84-2 effects a constitutional taking, a determination that LUBA lacks jurisdiction to review the ordinance means that a court, rather than LUBA, is the appropriate forum for such a claim.

[14] As we observed in *Marks*, the same test applies to both LUBA and LCDC. *Marks*, 327 Or App at 727-732.

future uses and planning activities."[15] *Id.* (internal quotation marks omitted).

Ultimately, applying the "significant impact" test to the intergovernmental agreements at issue in *Marks*, we determined that those agreements, which governed the timing of land-use planning for certain geographical areas, would likely have a significant impact on future land use development in the affected region. *Id*. at 734-39.

In this case, LUBA reasoned that Ordinance 84-2 did not have any "significant impact" on land use for the purpose of common law jurisdiction because petitioners did not demonstrate how the ordinance would affect "*the land use status quo* of their dwellings" and noted that Ordinance 84-2 "has no more or less impact on land use than any other business licensing programs that regulate business use of property." (Emphasis in LUBA order). LUBA also noted that the county's zoning code was silent with respect to short-term rentals and concluded that the ordinance did not affect the designated land uses for property within the county in a way that would implicate LUBA's jurisdiction.

Having reviewed LUBA's reasoning, we are unable to conclude that LUBA's application of the significant impact test on these facts is erroneous in substance. As explained above, the county has not treated short-term rentals as a land-use matter or otherwise sought to regulate them through the comprehensive plan or other laws addressing land use. Land designated for use as a dwelling remains designated for use as a dwelling under Ordinance 84-2. And although the licensing scheme will have some effect on property owners who wish to use their homes as short-term rentals and, as practical matter, will affect how some owners are able to use their dwellings, under the significant impact test, the mere fact that a regulation affects how a person may use their property does not mean the regulation (or other governmental action) affects land use in a way that triggers LUBA's common law jurisdiction.

---

[15] Thus, as we explained in *Marks*, "in some instances, a decision *not to* change the use of land can have a significant impact." 327 Or App at 729 (emphasis in original).

Rather, for LUBA to have jurisdiction under the significant impact test, the regulation must have a "*significant impact*" on present or future land use. *Marks*, 327 Or App at 710 (emphasis added); *see id.* at 728 ("[W]hereas some decisions, such as to resurface a street or repair potholes, have only a de minimis impact on land use, and some, such as to construct a major arterial road or a bridge, have a substantial impact, a large number of a city's day-to-day decisions regarding public works and roads fall in between."); *Kerns*, 294 Or at 135 (city's authorization of improvement for previously unimproved street would have significant impact on present and future land use because it would change traffic flow); *1000 Friends of Oregon*, 62 Or App at 77 (county decision to incorporate new city within county boundaries had a significant impact on present and future land use because it would change formerly rural land to urban use); *Cave v. Lincoln County*, ___ Or LUBA ___,___ (LUBA No 2021-122, Mar 4, 2022) (slip op at 9) (holding that the significant impact test applies when the "petitioner identifies non-land-use standards that have some direct bearing on or relationship to the use of land that the petitioner believes apply to the decision and would govern LUBA's review."); *Arbor Lodge Neighborhood Ass'n v. City of Portland*, ___ Or LUBA ___, ___ (LUBA Nos. 2019-089/107, May 19, 2020) (slip op at 10) (city decision to extend building permits after city changed zoning regulations applicable to development project did not have significant impact on present or future land use because the extensions did not alter land uses allowed in the zone and did not have relationship to use of land).

We agree with LUBA that petitioners have not demonstrated that the licensing program in Ordinance 84-2 meets that standard. Under the program, dwellings will stay dwellings and many short-term rentals will stay short-term rentals. Although Ordinance 84-2 may have more than a *de minimis* impact on land use, there is no basis to conclude that the impact rises to the level of substantial.[16] *Marks*, 327

---

[16] On this point, we do not express an opinion on whether a county decision to deny an application for a short-term rental license on the ground that the applicant's property is in a geographic subarea that has reached its license limit would have a significant impact on the land use of the property such that LUBA would have common law jurisdiction.

Or App at 728 (noting the range of decisions that have more than a *de minimis* impact on land use but that fall short of having the substantial impact required to trigger LUBA's common-law jurisdiction). And, thus, we are not persuaded that LUBA erred in determining that it lacked common law jurisdiction to review the ordinance.

Affirmed.