No. 631 September 5, 2024 735

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Joan NEICE
and Michael Galizio,
*Petitioners,*

*v.*

PROSPER PORTLAND
and City of Portland,
*Respondents.*

Land Use Board of Appeals
2023091; A184437

Submitted July 16, 2024.

Ross Day and Day Law, P.C., filed the brief for petitioners.

Linly Rees filed the brief for respondents.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Petitioners seek judicial review of a final order of the Land Use Board of Appeals (LUBA) granting the City of Portland and Prosper Portland's motion to dismiss for lack of common law jurisdiction. Petitioner had challenged Prosper Portland's Resolution 7512.[1] We review LUBA's final order to determine whether, as petitioners allege, its decision is unlawful in substance. ORS 197.850(9)(a). We conclude that it is not and affirm.

The operative facts are not in dispute. Pursuant to a lease agreement, the City of Portland used a building owned by Prosper Portland, the city's urban renewal agency, as a navigation center for unhoused individuals.[2] The lease agreement did not permit lease extensions beyond December 2023, so Prosper Portland passed Resolution 7512, which granted the city a use permit to continue operating the navigation center out of the building.

Petitioners sought LUBA's review of Resolution 7512. They invoked LUBA's common law jurisdiction, and in support of jurisdiction, argued that the navigation center has significantly impacted land use because the center has attracted unhoused individuals to the surrounding neighborhood, which has led to an increase in crime and violence against other residents, causing neighbors to fear for their safety. They also argued that, under our decision in *Marks v. LCDC*, 327 Or App 708, 536 P3d 995 (2023), Resolution 7512 was a decision not to change the use of land, which had significant impacts on land use for the same reasons.

---

[1] We note at the outset that petitioners only invoked LUBA's common law jurisdiction and did not seek LUBA's review pursuant to its statutory authority.

[2] The city's original approval of the construction permit for the navigation center was challenged as a statutory land use decision before LUBA. LUBA dismissed the challenge because it concluded that the city's approval fit within the "clear and objective land use standards" exception to LUBA's review of statutory land use decisions. *Madrona Park, LLC v. City of Portland*, 80 Or LUBA 26, *aff'd without opinion*, 300 Or App 403, 450 P3d 1050 (2019).

The navigation center also underwent a discretionary design review under the city's zoning code. The city approved the navigation center's design subject to a few conditions, the city's Design Commission approved the design on administrative appeal, and no party petitioned LUBA for review of the Design Commission's approval, although it was subject to LUBA's review as a statutory land use decision.

LUBA rejected petitioners' arguments invoking its common law jurisdiction and granted the city and Prosper Portland's motion to dismiss for lack of jurisdiction. It concluded that Resolution 7512 was not a land use decision under the "significant impact test."[3] Petitioners now seek judicial review of LUBA's final order dismissing their challenge.

"LUBA's jurisdiction to review local government actions derives from both statute and, perhaps surprisingly for a legislatively created body, the common law." *Akiyama v. Tillamook County*, 333 Or App 315, 317, ___ P3d ___ (2024). By statute, LUBA has "exclusive jurisdiction to review any 'land use decision.'" ORS 197.825(1). Under the common law, LUBA has jurisdiction to review local government actions that will likely have a significant impact on current or present land use, even if the action does not fall within the statutory definition of a land use decision; that is, the action must affect the land use status quo. *Akiyama*, 330 Or App at 318, 330 (citing *Marks*, 327 Or App at 727-28). Under either source of law, the party seeking to invoke LUBA's review has the burden of proving that the challenged government action falls within the agency's jurisdiction. *Akiyama*, 333 Or App at 317-18 (citing *Billington v. Polk County*, 299 Or 471, 475, 703 P2d 232 (1985)).

In this case, petitioners have not demonstrated that LUBA's final order dismissing their challenge to Resolution 7512 is unlawful in substance, for two reasons.

First, petitioners' asserted impacts on land use—an increase in crime and violence—are not tied to the use of land in a way that gives rise to LUBA's common law jurisdiction. As we have stated, the significant impacts test is concerned with government actions that affect the land use status quo.

---

[3] In a concurring opinion, LUBA Chair Ryan questioned the validity and relevance of the significant impact test. In her view, the Supreme Court's creation of the common-law test for jurisdiction in *Billington v. Polk County*, 299 Or 471, 479, 703 P2d 232 (1985), "impermissibly expanded LUBA's jurisdiction set forth in ORS 197.825(1)." She explained that, at the time the court introduced the test, the legislature had not defined a "land use decision" by statute, but it has since done so. Chair Ryan urged the Supreme Court to overrule *Billington* and urged the legislature to confine LUBA's jurisdiction to only statutory land use decisions.

We express no opinion on the matter given that Supreme Court decisions are binding on us unless overruled.

*Akiyama*, 333 Or App at 330-32. For example, we have held that a county's proposed incorporation for a new city within county lines significantly impacted the land use status quo of the county because the incorporation fixed boundary lines for the new city within the county. *1000 Friends of Ore. v. Wasco Co. Court*, 62 Or App 75, 77, 81-82, 659 P2d 1001, *rev den*, 295 Or 259 (1983). If incorporation passed, then land that was not previously available for urban use would be made available for urban development to accommodate the new city, which would have had significant impacts on land use. *Id*. at 81-82.

By contrast, in *Akiyama*, we held that a county's implementation of a regulatory program for short-term rentals did not have significant impacts on land use because any effect of the program on property owners' use of their property did not concern the designated land use of the short-term rentals. 333 Or app at 331. The regulatory program only imposed operational requirements on property owners intending to use their dwellings as short-term rentals. *Id*. at 320. We concluded that those operational requirements had a *de minimis* effect on short-term rental properties, which did not rise to a substantial impact subject to LUBA's review. *Id*. at 332.

Here, petitioners' assertion that an increase in crime and violence as a result of the navigation center has significant impacts on land use does not square with the case law. Increased rates of crime and violence do not in any way affect the land use status quo of the neighborhood. That is, the designated land uses in the area remain the same as before the adoption of Resolution 7512. Resolution 7512 is not a government decision that would restrict or allow previously unused land for other land uses, as in *Wasco Co. Court*, nor are the increases in crime and violence concerned with the land use designation of the navigation center or the surrounding neighborhood, as in *Akiyama*. Moreover, Resolution 7512 did not require the application of the city's land use planning and zoning responsibilities—those responsibilities were carried out in earlier decisions by the city when it granted the building permit and approved the design of the navigation center. We agree with LUBA that

increases in crime and violence are not tied to the land use status quo such that it has common law jurisdiction over petitioners' challenge to Resolution 7512.

To the extent that petitioners argue that operation of the navigation center affects their use of residential land, we are not persuaded. As we have explained, "the mere fact that a [government decision] affects how a person may use their property does not mean the * * * government action * * * affects land use in a way that triggers LUBA's common law jurisdiction." *Akiyama*, 333 Or App at 331; *see also Arbor Lodge Neighborhood Ass'n v. City of Portland*, ___ Or LUBA ___ (LUBA Nos. 2019-089/107, May 19, 2020) (slip op at 10) (finding no significant impacts when a government decision did "not alter any of the land uses allowed" in the area).[4] We also reject petitioners' contention that LUBA erred when it concluded that "non-land-use impacts" cannot be considered for purposes of the significant impacts test. Petitioners are correct that LUBA has said that challengers to government action may "identify the non-land use standards that the petitioner believes apply to the decision and would govern LUBA's review." *Northwest Trails Alliance v. City of Portland*, 71 Or LUBA 339, 346 (2015). Nevertheless, LUBA has unequivocally stated that such "non-land-use standards must have some bearing or relationship to the use of land, such as when LUBA's review would be governed by another "statute or other laws, such as road vacation statutes, that provide standards for the [government decision]." *Id*. Here, petitioners do not identify the non-land-use laws that would govern Resolution 7512, and otherwise do not demonstrate that LUBA erred in its final order.

Second, LUBA did not err in concluding that *Marks* is inapplicable in this case. In *Marks*, we held that government action to not change an existing situation may give rise to LUBA's common law jurisdiction. 327 Or App at 734-35. There, we concluded that two intergovernmental agreements between multiple cities and public agencies prohibiting the urban development of a geographic area had

---

[4] Although LUBA's opinions are not binding on this court, they are relevant for persuasive value. *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 251-52, 264 P3d 1265 (2011) (so noting); *Manchester Solar v. Yamhill County*, 328 Or App 554, 559, 538 P3d 223 (2023) (same).

significant impacts on land use because the decision not to build on the land would have cascading effects on land use, such as the availability of housing that local governments are required to plan for pursuant to the statewide planning goals. Resolution 7512 may be a decision not to change an existing situation, but unlike the intergovernmental agreements in *Marks*, Resolution 7512 does not prohibit the development of the surrounding neighborhood or area, nor does it purport to either approve or deny land uses. Accordingly, LUBA did not err in rejecting petitioners' argument grounded in *Marks*.

For all those reasons, LUBA's final order dismissing petitioners' challenge to Resolution 7512 is not unlawful in substance.

Affirmed.